988 F.2d 344
 Fed. Sec. L. Rep. P 97,387, 25 Fed.R.Serv.3d 264
 Stanley B. BLOCK; John C. Blazier; Joseph A. Clements;
Dan W. Deloney; Wyatt C. Deloney; Ralph Diorio; Robert A.
Epstein; Charles B. Filleman; Glenna Goodacre; Robert
Goodacre; Joe E. Goodwin; Sarah Grace; Edmond J. Harris;
Wesley H. Hocker; Roman Hought; W.R. Jacobsen; Robert L.
Jordan; Ted Kotcheff; Frank H. Kush; David Laman; Hurdle
H. Lea; David D. Maytag; Doyle E. Montgomery; Henry
Nobel; Ron Maller; William H. Plummer; Edward E.
Rottenberry; G. Walter Rottenberry; Michael J. Scarfia;
Bill R. Sparks; Lewis F. Wood, Plaintiffs-Appellants,
v.
FIRST BLOOD ASSOCIATES; A. Frederick Greenberg; Richard M.
Greenberg; Anabasis Investments, N.V.; Carolco Pictures,
Inc.; Goldschmidt, Fredericks & Oshatz; Henry J.
Goldschmidt; Lawrence E. Goldschmidt; Michael P. Oshatz;
Leonard A. Messinger; Sanford J. Schlesinger; Edward I.
Sussman; Mark A. Meyer; Touche Ross & Co., Defendants.
FIRST BLOOD ASSOCIATES; A. Frederick Greenberg; Richard M.
Greenberg, Defendants-Appellees,
v.
UNITED STATES of America, Intervenor.
 No. 90, Docket 91-7558.
 United States Court of Appeals,
Second Circuit.
 Argued Nov. 24, 1992.
Decided March 15, 1993.
 
 I. Stephen Rabin, New York City (Joseph P. Garland, Brian Murray, New York City of counsel), for plaintiffs-appellants.
 Scott M. Berman, New York City (Jay G. Strum, Michael K. Rozen, Kaye, Scholer, Fierman, Hays & Handler, New York City, of counsel), for defendants-appellees.
 Kay K. Gardiner, Asst. U.S. Atty. for S.D.N.Y., New York City (Otto G. Obermaier, U.S. Atty. for S.D.N.Y., Gabriel W. Gorenstein, Asst. U.S. Atty. for S.D.N.Y., New York City, Barbara Biddle, Scott R. McIntosh, Appellate Staff, Civ. Div., U.S. Dept. of Justice, Washington, DC, James R. Doty, General Counsel, Paul Gonson, Solicitor, Jacob H. Stillman, Associate Gen. Counsel, Leslie E. Smith, Sr. Sp. Counsel, Michael G. Lenett, Sr. Counsel, Kelly Rowe, Atty., S.E.C., Washington, DC), for intervenor and amicus curiae S.E.C.
 Before PIERCE, MINER and WALKER, Circuit Judges.
 MINER, Circuit Judge:
 
 
 1
 Plaintiff-appellant Stanley Block filed a class action in November 1986 against defendants-appellees First Blood Associates ("First Blood"), A. Frederick Greenberg and Richard M. Greenberg (collectively "the Greenbergs"), and against defendants Anabasis Investments, N.V. ("Anabasis") and Carolco Pictures, Inc. ("Carolco") after purportedly relying to his detriment on allegedly false statements made in a private placement memorandum issued by First Blood. In his complaint, Block alleged that all the defendants committed securities fraud, in violation of section 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b) (1988), and Rule 10b-5 of the Securities and Exchange Commission, 17 C.F.R. § 240.10b-5 (1992), and committed the common law torts of fraud and deceit. Also alleged in the complaint was a breach of contract claim against First Blood.
 
 
 2
 In July of 1988 the district court denied Block's motion for class certification but granted him leave to renew upon a showing that a "meaningful number" of other investors shared with him an "identity of interest." See Block v. First Blood Assocs., 691 F.Supp. 685, 695-96 (S.D.N.Y.1988) ("Block II "). Block's second motion for class certification was filed in December 1988 and denied by the district court three months later. See Block v. First Blood Assocs., 125 F.R.D. 39 (S.D.N.Y.1989) ("Block III ").
 
 
 3
 In July of 1989 Block and twenty-nine other investors (collectively "the Investors") filed an amended complaint against the original defendants: First Blood; the Greenbergs; Anabasis; and Carolco; and added the following as defendants: Touche Ross & Co. ("Touche Ross"); the law firm of Goldschmidt, Fredericks & Oshatz; and its partners, Barry Fredericks, Henry Goldschmidt, Michael Oshatz, Leonard A. Messinger, Sanford Schlesinger, Edward Sussman and Mark Meyer.[1] In his amended complaint, Block reiterated the allegations in his first complaint, except the breach of contract claim against First Blood, and further alleged: section 10(b) and common law fraud and deceit against the newly added defendants; negligence and malpractice against the newly added defendants; breach of contract against Anabasis and Carolco; breach of fiduciary duty against First Blood and the Greenbergs; and negligent misrepresentation against all the defendants. The district court ordered that discovery be completed by November 14, 1990, and that a final pretrial order be submitted two weeks later.
 
 
 4
 On November 5, 1990, First Blood and the Greenbergs filed an amended answer, raising a statute of limitations defense for the first time. Three days later, we decided Ceres Partners v. GEL Associates, 918 F.2d 349 (2d Cir.1990), holding that section 10(b) claims must be brought within one year of discovery of the fraud but no more than three years after the fraud occurred. On November 19, First Blood and the Greenbergs moved for summary judgment to dismiss the Investors' action as time barred. On April 30, 1991, the district court granted the defendants' motion and dismissed the action. See Block v. First Blood Assocs., 763 F.Supp. 746 (S.D.N.Y.1991) ("Block V "). The district court construed defendants' summary judgment motion as including a motion to amend their answer pursuant to Fed.R.Civ.P. 15(a) to plead a statute of limitations defense. See id. at 747-48. After granting the defendants leave to amend, see id. at 748-50, the district court found that the Investors' claims were time barred under the pre-Ceres statute of limitations because their action accrued in 1982--the date when the last plaintiff purchased shares in First Blood--and all the acts complained of took place at or before the purchase of the shares. See id. at 750-51. The district court also determined, upon applying retroactively the new limitations period announced in Ceres, that the Investors' action was time barred. See id. at 751-52. Finally, the district court dismissed the Investors' state law claims, apparently for lack of pendent jurisdiction. See id. at 752.
 
 
 5
 The Investors appeal from the district court's dismissal of their claims, and Block appeals from the district court's refusal to grant his motion for class certification.
 
 BACKGROUND
 
 6
 The facts giving rise to this action are set forth in five published opinions written by Judge Sweet, see Block V, 763 F.Supp. 746; Block v. First Blood Assocs., 743 F.Supp. 194 (S.D.N.Y.1990) ("Block IV "); Block III, 125 F.R.D. 39; Block II, 691 F.Supp. 685; Block v. First Blood Assocs., 663 F.Supp. 50 (S.D.N.Y.1987) ("Block I "). We assume familiarity with these opinions and therefore provide only a brief summary of the facts and circumstances giving rise to this action.
 
 
 7
 First Blood is a New York limited partnership formed in July 1981 for the purpose of acquiring the rights to the film First Blood (Carolco/Orion 1982) ("the film") from Anabasis, a privately-owned company organized under the laws of the Netherlands Antilles. The Greenbergs are the only general partners of First Blood. See Block II, 691 F.Supp. at 688.
 
 
 8
 In September 1982, through a sale and service contract ("the Purchase Agreement"), First Blood purchased the film from Anabasis for $200,000 in cash and a recourse note in the sum of $18,924,000. First Blood also entered into a distribution agreement with Anabasis ("the Distribution Agreement"), granting "Anabasis the exclusive right to exploit the film on a world-wide basis in all media for a period commencing on the date of the Distribution Agreement and ending December 31, 1990" and "the exclusive right to exploit the film to the full extent such rights are possessed by [First Blood]." See id.
 
 
 9
 Anabasis agreed to pay First Blood certain "contingent license fees" and certain "additional license fees" if the film generated certain levels of "gross receipts." Contingent license fees were estimated to be slightly in excess of the amount due on the recourse note until 1989 (approximately $2000 per full partnership unit per year), after which they would increase substantially. "Additional license fees" included various percentages of the film's gross receipts in excess of $45,000,000. The Distribution Agreement required that Anabasis pay First Blood "additional license fees as earned." See id.
 
 
 10
 First Blood wanted to take advantage of certain tax regulations in force at the time and to generate long-term profits. Touche Ross prepared a report, projecting that substantial tax benefits would accrue to First Blood through 1987, to be followed by substantial profits beginning in 1989. First Blood issued a private placement memorandum ("the Memorandum") offering limited partnership units to " 'accredited' investors or [those investors] who either alone or with their purchaser representative(s) have such knowledge and experience in financial and business [sic] that they are capable of evaluating the merits and risks of their prospective investments." First Blood offered twenty-eight limited partnership units for $200,000 each and accepted subscriptions for fractional units. Fifty-seven investors purchased full or fractional interests in First Blood, ranging from $50,000 to $400,000 in price. See id.
 
 
 11
 The Memorandum limited the offering to sophisticated and wealthy investors. All prospective limited partners were required to complete a purchaser questionnaire, which required the investors to list their income tax rate, net worth, education, frequency of investment in marketable securities and previous investments purchased under the nonpublic offering exemption from registration of the Securities Act of 1933 ("the 1933 Act"), 15 U.S.C. § 77d (1988). See 691 F.Supp. at 688-89.
 
 
 12
 First Blood also required the limited partners purchasing a full partnership unit to assume $662,970 of the recourse note executed in favor of Anabasis ("the Assumption Agreement") or a share of the recourse note proportionate to their fractional partnership units. The Assumption Agreement further required the limited partners to bear their proportionate shares of the principal amount of the unpaid indebtedness to the extent the contingent licensee fees payable by Anabasis to First Blood were insufficient to pay the principal due on the recourse note. First Blood promised that:
 
 
 13
 [t]he Limited Partners will share in ninety-eight (98%) percent of the net profits, losses and cash flow of the Partnership, and the General Partners will receive two (2%) percent of the net profits, losses and cash flow. Distributions to the Limited Partners will be allocated among them in proportion to their respective capital accounts. THERE CAN BE NO ASSURANCE THAT EXPLOITATION OF THE FILM WILL YIELD SUFFICIENT CASH FLOW TO RETURN TO THE LIMITED PARTNERS ANY PORTION OF THEIR INVESTMENT IN THE PARTNERSHIP, INCLUDING ANY PAYMENT REQUIRED UNDER THE ASSUMPTION AGREEMENT OR Provide A Profit Thereon.
 
 
 14
 See id. at 689.
 
 
 15
 In October 1982, Block purchased one-quarter of a partnership unit for $50,000. Block has practiced law for over thirty years, has invested frequently in marketable securities, has previously purchased securities exempt from registration under the 1933 Act and has been a limited partner in a securities arbitrage partnership. Prior to investing in First Blood, Block received and reviewed the Memorandum and the Touche Ross projections of First Blood's profitability and tax benefits. Block has received all distributions projected in the Touche Ross projections and all promised tax savings. First Blood has disbursed ninety-eight percent of the net profits, losses and cash flow of the partnership to the limited partners. Block also has received all necessary information for tax reporting purposes as promised in the Memorandum.
 
 
 16
 The gravamen of the Investors' complaint concerns inconsistencies between the Memorandum and the Purchase Agreement with respect to First Blood's ownership of the film. The Memorandum indicates that First Blood is to have all of Anabasis' right, title and interest to the film, including the music rights, sound recording rights and merchandising rights. The Purchase Agreement, however, provides that Anabasis reserves the following rights in the film: the rights to any remake; the rights to stage productions; the music rights; the sound recording rights; the merchandising rights; the right to publish; the television rights; the rights in the literary work; any option rights; and the right to make "featurettes." See id.
 
 
 17
 Thus, the Investors claim that First Blood did not in fact acquire all rights to the film and indeed failed to acquire the necessary rights for the limited partnership to earn a profit from the distribution and other uses of the film. The Investors further claim that, because of First Blood's failure to disclose that it did not acquire all the rights to the film, First Blood could never earn a profit, thereby causing the IRS to disallow the tax deductions claimed by one of the Investors on the ground that the partnership investment was a tax-motivated, and not a profit-motivated, transaction. Although the film, starring Sylvester Stallone, was a "huge success," the Investors claim to have spent an additional $41,669 in financing charges and to have received less than $11,000 in distributions on each $200,000 limited partnership unit. The Investors demand recovery from the appellees of the amounts invested in and expended on account of their investments in First Blood, the amount of additional taxes, interest and penalties due and owing as a result of the revenues generated by the film, and punitive damages. See Block IV, 743 F.Supp. at 196.
 
 DISCUSSION
 1. The Accrual of the Section 10(b) Claim
 
 18
 Prior to Ceres, a section 10(b) claim accrued " 'when the plaintiff ha[d] actual knowledge of the alleged fraud or knowledge of facts which in the exercise of reasonable diligence should have led to actual knowledge,' " Phillips v. Levie, 593 F.2d 459, 462 (2d Cir.1979) (quoting Stull v. Bayard, 561 F.2d 429, 432 (2d Cir.1977), cert. denied, 434 U.S. 1035, 98 S.Ct. 769, 54 L.Ed.2d 783 (1978)), and the statute of limitations period was determined by looking to the law of the forum state, Ceres, 918 F.2d at 352. Here, the district court properly applied New York's borrowing statute, N.Y.Civ.Prac.L. & R. 202 (McKinney 1990), which directs a court to apply the statute of limitations of the state where the cause of action accrued. We have held that a § 10(b) action accrues in the state where "its economic impact is felt, normally the plaintiff's residence." See Sack v. Low, 478 F.2d 360, 366 (2d Cir.1973). Thus, if the Investors' action were time barred in the states of their residence, their action also would be barred in a federal court sitting in New York. Ceres, 918 F.2d at 353. The parties agree that this action would be time barred under the applicable statutes of limitations in the states where the Investors reside if it accrued in October 1982, i.e., when the last investor purchased shares in First Blood. See Block V, 763 F.Supp. at 751.
 
 
 19
 The Investors argue that their action did not accrue until late 1984, when they first realized that they were not receiving the expected return on their investments. We agree with the district court's finding that, in October 1982, the Investors possessed all the knowledge necessary to provide them with sufficient inquiry notice that the Memorandum contained material misstatements with respect to First Blood's ownership of the rights to the film and the questionable profitability of their investments. The Purchase Agreement was frequently referred to in the Memorandum, and the Memorandum indicated that the Purchase Agreement was available for inspection at First Blood's offices. Moreover, the Memorandum includes numerous underscored and capitalized warnings that the investment contains a substantial risk of adverse tax consequences.[2] Given the sophistication of the Investors, an examination of the Memorandum should have revealed that this investment was tax-motivated and not intended to turn a profit, and an examination of the Purchase Agreement would have revealed that First Blood was not, in fact, the owner of all the rights to the film. See Landy v. Mitchell Petroleum Technology Corp., 734 F.Supp. 608, 617 (S.D.N.Y.1990); see also Bender v. Rocky Mountain Drilling Assocs., 648 F.Supp. 330, 334-35 (D.D.C.1986). Thus, the district court properly determined that the Investors' action accrued in October 1982 and dismissed their action as time barred.[3]
 
 
 20
 Because we are affirming the district court's decision to dismiss the Investors' action under pre-Ceres law, we need not reach the issues of: whether the district court erred in retroactively applying the rule in Ceres to this action; whether section 27A of the Securities Exchange Act of 1934 (providing for a revival of certain time-barred § 10(b) claims) is unconstitutional; or whether the district court properly declined to certify this case as a class action.
 
 
 21
 2. Waiver of the Statute of Limitations Defense
 
 
 22
 The Investors further argue that the appellees have waived their statute of limitations defense by failing to raise it over a period of more than four years since the complaint was filed. In support of their argument, the Investors rely on Fed.R.Civ.P. 8(c), which requires a party to "set forth affirmatively ... statute of limitations ... and any other matter constituting an avoidance or affirmative defense."
 
 
 23
 After observing that the appellees had not in fact moved to amend their answer to include the statute of limitations as an affirmative defense, Judge Sweet construed their summary judgment motion also as a motion to amend under Fed.R.Civ.P. 15(a). Rule 15(a) provides that leave to amend "shall be freely given when justice so requires." We review a district court's decision to grant a party leave to amend under Rule 15 for abuse of discretion. Tokio Marine & Fire Ins. Co. v. Employers Ins. of Wausau, 786 F.2d 101, 103 (2d Cir.1986).
 
 
 24
 The rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith. See State Teachers Retirement Bd. v. Fluor Corp., 654 F.2d 843, 856 (2d Cir.1981). However, "the longer the period of an unexplained delay, the less will be required of the nonmoving party in terms of a showing of prejudice." Evans v. Syracuse City Sch. Dist., 704 F.2d 44, 47 (2d Cir.1983) (citing Advocat v. Nexus Indus., Inc., 497 F.Supp. 328, 331 (D.Del.1980)). In determining what constitutes "prejudice," we consider whether the assertion of the new claim would: (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction. See, e.g., Tokio Marine & Fire Ins. Co., 786 F.2d at 103; Fluor, 654 F.2d at 856; Strauss v. Douglas Aircraft Co., 404 F.2d 1152, 1157-58 (2d Cir.1968); Calloway v. Marvel Entertainment Group, 110 F.R.D. 45, 48 (S.D.N.Y.1986). "Mere delay, however, absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend." Fluor, 654 F.2d at 856.
 
 
 25
 In arguing that the district court abused its discretion by granting the appellees leave to amend their answer, the Investors rely on our decision in Strauss, where we reversed a district court's decision granting the defendant leave to amend its answer to include a statute of limitations defense. However, the plaintiff in Strauss successfully demonstrated that he could have timely brought his action in another forum had the defendant promptly raised its statute of limitations defense. See Strauss, 404 F.2d at 1157-58. Here, however, the Investors have failed to demonstrate that they could have brought their claims in another forum if the appellees had raised their statute of limitations defense earlier.
 
 
 26
 Plaintiffs' reliance on our decision in Evans is also misplaced. In Evans, plaintiff and her appointed counsel commenced an action for discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. (1988). The defendant moved to amend its answer to assert the defense of res judicata based on a dismissal over two years earlier of a similar claim brought by the plaintiff pro se in state court. We refused to allow the defendant to amend because plaintiff's counsel was unaware of the state court's decision, and the defendant--which knew of the decision--should have informed plaintiff's counsel. See Evans, 704 F.2d at 48. Had the plaintiff's counsel known of the state court's decision, the res judicata issue could have been adjudicated prior to the expenditure of time, effort and resources. See id. The defendant in Evans acted in bad faith, whereas here the Investors' claim was untimely on the day it was commenced and the defendants were not aware of facts that were unknown to the plaintiffs.
 
 
 27
 The Investors argue that they were prejudiced solely because of the time, effort and money they expended in litigating this matter. These allegations do not arise to the "substantial prejudice" we contemplated in Strauss, see 404 F.2d at 1155, or even the lesser prejudice required in Evans, see 704 F.2d at 47. Therefore, the district court did not abuse its discretion in granting First Blood and the Greenbergs leave to amend their answer.
 
 3. The Pendent Claims
 
 28
 A district court may exercise pendent jurisdiction over state-law claims "whenever the federal-law claims and state-law claims in the case 'derive from a common nucleus of operative fact' and are 'such that [a plaintiff] would ordinarily be expected to try them all in one judicial proceeding.' " Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 349, 108 S.Ct. 614, 618, 98 L.Ed.2d 720 (1988) (quoting United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966)). The decision whether to exercise pendent jurisdiction is within the discretion of the district court. Kidder, Peabody & Co. v. Maxus Energy Corp., 925 F.2d 556, 563 (2d Cir.), cert. denied, --- U.S. ----, 111 S.Ct. 2829, 115 L.Ed.2d 998 (1991). In exercising that discretion, a district court is required to "consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction...." Carnegie-Mellon, 484 U.S. at 350, 108 S.Ct. at 619.
 
 
 29
 Although courts adjudicating cases similar to plaintiffs' have declined to dismiss pendent claims after the federal claims were dismissed, see, e.g., Enercomp, Inc., v. McCorhill Pub., Inc., 873 F.2d 536, 545-46 (2d Cir.1989); Philatelic Found. v. Kaplan, 647 F.Supp. 1344, 1348 (S.D.N.Y.1986), we do not believe Judge Sweet abused his discretion in refusing to exercise pendent jurisdiction over plaintiffs' state law claims when their federal claims were dismissed before trial. See Gibbs, 383 U.S. at 726, 86 S.Ct. at 1139 ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.").
 
 CONCLUSION
 
 30
 The judgment of the district court is affirmed for the foregoing reasons.
 
 
 
 [1]
 Anabasis, Carolco and the defendants added in the amended complaint have been dismissed from the case and are not parties to this appeal
 
 
 [2]
 The Memorandum provides:
 It is very likely that the Internal Revenue Service will examine the Federal income tax returns of the Partnership and, in such event, may challenge positions taken by the Partnership. SUCH CHALLENGES MAY BE SUCCESSFUL.... NEITHER THE PARTNERSHIP NOR ANY AGENT THEREOF ASSUMES ANY RESPONSIBILITY FOR THE TAX CONSEQUENCES OF THIS TRANSACTION TO AN INVESTOR.
 
 
 [3]
 The district court's determination that plaintiffs' action accrued in October 1982 disposes of their arguments that the filing of the class action tolled the statute of limitations for all the plaintiffs except Block and that the claims asserted by plaintiffs in their amended complaint relate back to the filing of the original complaint in November 1986. Because the class action complaint was filed more than four years after the statute of limitations began to run, none of the plaintiffs' claims was timely on the date the complaint was filed. See Block V, 763 F.Supp. at 750 n. 3