**The STATE OF NEW YORK, Plaintiff,**

v.

**SOLVENT CHEMICAL COMPANY, INC., Defendants.**

No. 83–CV–1401C.

United States District Court,
W.D. New York.

March 20, 1998.

---

Jaeckle, Fleischmann & Mugel, L.L.P. (Dennis P. Harkawik, of counsel), Buffalo, NY, for Solvent Chemical Company, Inc.

Harris, Beach & Wilcox (Henry W. Killeen, III, of counsel), Buffalo, NY, for Laidlaw Transportation Co., Ltd.

Consolidated Rail Corporation (Rodney Griffith, Associate General Counsel—Envi-

ronmental Law), Philadelphia, PA, for Consolidated Rail Corporation.

Raichle, Banning, Weiss & Stephens (R. William Stephens, of counsel), Buffalo, NY, for General Motors Corporation.

Husch & Eppenberger (Michael H. Wetmore, of counsel), St. Louis, MO, for Olin Corporation.

Irwin F. Roth, New York City, for ICC Industries, Inc.

### DECISION and ORDER

CURTIN, District Judge.

### BACKGROUND

Currently pending is Solvent Chemical Co., Inc.'s ("Solvent") motion for leave to file a fifth amended third-party complaint (Item 549). On February 6, 1997, Solvent filed a motion for leave to file a fourth amended third-party complaint in which Solvent sought to add Olin Corporation ("Olin") as a third-party defendant, to assert an additional claim against Consolidated Rail Corporation ("Conrail"), and to make various additional minor changes (Item 529). That motion was superseded on March 21, 1997, when Solvent filed its motion for leave to file a fifth amended third-party complaint incorporating all changes in its proposed fourth amended third-party complaint and adding fifty-two waste generators as third-party defendants (Item 549). The court heard argument on the motion on January 23, 1998.

### DISCUSSION

#### I. Solvent's Proposal to Add Olin as a Third–Party Defendant

Solvent's proposed amendment alleges two claims against Olin: (1) Olin is liable under CERCLA as a former operator of the subject site (Item 549, Exhibit A, ¶¶ 96–104), and (2) Olin's nearby facility is the source of contamination at an off-site "hot spot" which Solvent is being required to address as well as the source of some on-site contamination (Id., ¶¶ 133–137). Olin contends that Solvent should not be permitted to assert the operator claim.

Olin argues that its limited involvement at the site nearly forty years ago has been a matter of public record since before 1983, when the State originally filed suit against Solvent; therefore, Solvent knew, or through a reasonable inquiry could have known, of Olin's involvement at the site when Solvent filed its original third-party complaint in 1986 against other former owners and operators (Item 552, p. 2). Olin submits that as a result of Solvent's delay in impleading Olin, Olin will be forced to defend itself with "one hand tied behind its back" while the other alleged owners and operators have been dismissed with prejudice and full contribution protection (Item 632, p. 6; Item 706, p. 9). Olin notes that it had a maintenance contract with the United States during the time Solvent alleges Olin was an operator at the site. Olin argues that because the United States is no longer a party, Olin cannot use normal discovery procedures or use the force of a case management order to get information from the United States that would be necessary in defending against Solvent's claims, and this extra burden is unfairly prejudicial (Item 632, pp. 6–7; Item 706, pp. 9–10). Olin asserts that Fed.R.Civ.P. 14(a) requires Solvent to establish a reasonable excuse for its delay in moving to add Olin as a third-party defendant, and that Solvent has not met this burden.

Solvent contends that under Rule 14(a) and the cases construing the rule, a court should freely grant leave to amend a complaint to add parties where such leave would promote judicial efficiency by eliminating the necessity for the moving party to bring a separate action against the proposed new parties (Item 612, pp. 3–4). Solvent argues that presumably all of the claims related to the contamination of the subject site are being adjudicated in this action; therefore, it would be inefficient to require Solvent to pursue its operator claims against Olin in a separate action, particularly since Olin will be part of the present action for the hot spot claim (Id.; Item 731, p. 2). Solvent asserts that delay in seeking to add a party, standing alone, is an insufficient basis to deny leave to amend a pleading under Rule 14(a) (Item 612, p. 5). Solvent contends that the cases on which Olin has relied in support of its

"reasonable excuse for any delay" argument are not applicable here because the courts in those cases were applying a local rule, which is not applicable here, which specifically requires such a reasonable excuse (*Id.*, pp. 5–6; Item 665, pp. 3–4). Furthermore, Solvent asserts that there can be no delay before the statute of limitations has ever begun to run (Item 665, p. 2).

Solvent contends that even if the court requires it to supply an explanation for its alleged delay, Solvent did not learn of Olin's involvement on the site until the fall of 1996; consequently, it has not unreasonably delayed bringing claims against Olin (*Id.*, p. 3). Solvent argues that the public documents which Olin contends identified Olin's involvement at the site do not in fact provide any notice of the gravamen of Solvent's operator claim against Olin, and that Solvent only learned of the involvement through further investigation (*Id.*, pp. 2–3). Finally, Solvent asserts that Olin will not suffer any undue prejudice if the court permits Solvent to assert the operator claim in the present action because the third-party action is still in the very early stages. Discovery remains far from complete, and the court has not yet approved a case management order or set a trial date (Item 612, pp. 6–7).

Finally, Solvent asserts that it will bring a separate action against Olin on the operator claims if the court denies Solvent's current motion. Olin argues that Solvent would not be able to "do an end run" around this court's denial of Solvent's motion to implead Olin by filing a new action (Item 632, pp. 3, 7–8; Item 706, pp. 4, 10–11), citing *United States v. McGann*, 951 F.Supp. 372 (E.D.N.Y.1997), for authority. The question of whether Solvent would be able to initiate a separate action against Olin on the operator claims is not before the court at this time. As the *McGann* decision makes clear, such an inquiry turns on the specific circumstances of the case at the time the party attempts to bring a new action. I will not attempt to predict what those circumstances will be at some future date.

Rule 14(a) of the Federal Rules of Civil Procedure provides in pertinent part that:

At any time after commencement of the action a defending party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action who is or may be liable to the third-party plaintiff for all or part of the plaintiffs claim against the third-party plaintiff.

If the defendant fails to file a third-party complaint within ten days of its answer, the trial court has discretion to permit impleader. Rule 14(a) does not specify the factors a court should consider when evaluating whether impleader is proper. It is well established, however, that Rule 14(a) " 'was designed to permit the liberal joinder of parties so that judicial energy could be conserved and consistency of results guaranteed.' " *State of New York v. Solvent Chemical Co., Inc.*, 875 F.Supp. 1015, 1021 (W.D.N.Y.1995) (quoting *Olympic Corp. v. Societe Generale*, 462 F.2d 376, 379 (2d Cir. 1972)). A Rule 14(a) motion should be "freely granted to promote … efficiency unless to do so would prejudice the plaintiff, unduly complicate the trial, or would foster an obviously unmeritorious claim." *Hicks v. Long Island R.R.*, 165 F.R.D. 377, 379 (S.D.N.Y. 1996) (quoting *Shafarman v. Ryder Truck Rental, Inc.*, 100 F.R.D. 454, 459 (S.D.N.Y. 1984)). Furthermore, "although impleader may cause prejudice due to the need for additional discovery, that prejudice is sufficiently outweighed by the benefits of more efficient litigation to be gained by permitting impleader." *Hicks*, 165 F.R.D. at 379 (citations omitted).

In *Solvent Chemical Co.*, 875 F.Supp. at 1015, this court denied a motion to dismiss prior third-party complaints in the present action even though the claims against the moving party were brought more than ten years after the original filing of this lawsuit. My decision to deny the motion was based on my findings that discovery was far from complete and that there was still much to be done before the case could come to trial, the efficiency of considering all claims involving the subject site in a single lawsuit, and the moving party would not suffer any prejudice in its ability to defend against the claim in the present action that it would not also

suffer as a defendant in a separate action. *Id.*, at 1021. I explained that "the focus of the inquiry is on the interests of the court and the non-moving parties, not on those of prospective defendants." *Id.*

██ Solvent is correct in noting that the cases Olin has cited from this circuit for the proposition that Solvent must present a reasonable excuse for its delay in impleading Olin applied a local rule applicable only in the Southern and Eastern Districts of New York which expressly created a reasonable excuse requirement; nevertheless, the discretion to permit impleader rests entirely with the district court. Although delay, standing alone, is an insufficient basis to deny leave to amend a pleading, undue delay is a factor on which the court may rely to deny a Rule 14(a) motion. *See* 3 *Moore's Federal Practice*, § 14.21[3] (Matthew Bender 3d ed.). Thus, even though the authority presented by Olin is not directly on point, the cases make a strong argument for requiring Solvent to supply a reasonable explanation for its delay.

██ During the argument on this motion, I expressed my concern that Solvent had failed to offer proof that it, rather than its current attorney, only discovered Olin's potential operator liability in the fall of 1996. Solvent impleaded the United States in its original third-party complaint, filed on June 12, 1986. In the over ten years since the United States was made a third-party defendant, Solvent should have had many opportunities to conduct discovery which would have revealed that Olin had had a maintenance contract for operations on the site with the United States. At argument, Solvent simply stated that it did not submit discovery requests to the United States to learn exactly who had occupied or operated the site during the years the United States owned the site. The court is aware that in a complex, multiparty action, discovery on every claim does not always occur at a rapid pace. The litigants have to make discovery priorities. Nevertheless, a decade is quite a long time.

At oral argument, Solvent's counsel asserted that because the total documentation for the history of the operations at the site is voluminous and because Solvent is considering the potential liability of many parties, it simply took Solvent that long to identify Olin's involvement. Nonetheless, Solvent has not offered a single affidavit from an officer or employee attesting to the company's lack of knowledge of Olin's involvement prior to the fall of 1996.

Although in my 1995 order denying a motion to dismiss prior third-party complaints I stated that the focus of the inquiry is the interests of the court and the non-moving parties, not those of prospective parties, it seems counter-productive to ignore Olin's arguments at this time, only to consider them later as part of a motion to dismiss the operator claims against it as a result of undue prejudice. Olin is in a fundamentally different position from the fifty-two other proposed third-party defendants in that it is the only party alleged to have been an operator. If Solvent's new allegations are in fact true, Olin's potential liability may be quite high. Because Olin's involvement at the site was apparently conducted under a contract with the United States, Olin's discovery efforts would be significantly more difficult now that the United States has settled. Olin cannot send interrogatories to the United States for disclosure of individuals with knowledge of the United States–Olin contract or its performance, or use the force of a case management order to facilitate its discovery against settled parties. The interests of judicial economy and hearing all claims in a single action are still important; nevertheless, the particular circumstances involving Olin reveal that it would suffer significant prejudice in its ability to defend against the claim in the present action that it would not suffer in a separate action.[1]

Solvent should have learned, if it in fact did not learn, of Olin's involvement sometime during the ten-plus years that the United States was a party. The complete lack of an

---

1. Again, without addressing the question of whether Solvent will be able to bring a separate action against Olin, assuming that Solvent can bring a separate action, Olin would implead the United States in that action. Olin then would be able to use normal discovery devices with the United States.

explanation from Solvent's officers attesting to the company's lack of knowledge of Olin's involvement and an explanation about why it did not question the United States about who had operated the site during the government's ownership is particularly bothersome. If Solvent had impleaded Olin earlier, Olin would have had an opportunity to reach a settlement with the State along with the other alleged operators. Even if Olin had not settled, it would have been able to conduct discovery from the United States before the United States settled. Olin should not be required to shoulder the burden for Solvent's delay.

Thus, for the foregoing reasons, I deny that part of Solvent's motion which seeks to assert claims of operator liability against Olin.

## II. *Solvent's Proposal to Add Fifty–Two Generators as Third–Party Defendants*

■ Solvent seeks to add fifty-two generators who allegedly sent waste to the subject site as third-party defendants. Some of these generators sold waste to Solvent for disposal and/or treatment between 1972 and 1978 (Item 549, ¶¶ 85, 139–148). Others sold waste to Frontenac Environmental Services Inc. ("Frontenac") for disposal or treatment while Frontenac operated the site between 1980 and 1984 (Item 549, Exhibit A, ¶¶ 115, 131–132). General Motors Corporation ("General Motors") and Laidlaw, Inc. ("Laidlaw"), Frontenac's parent company, have each objected to this portion of Solvent's proposed amendment, arguing that this massive expansion of the lawsuit will further delay resolution of the claims against the current third-party defendants, thereby increasing transaction costs and legal fees (Items 597, 650, and 677).[2] Both objectors have expressed their concern that Solvent is trying to use the cost of litigation as a club to extort from the third-party defendants settlement amounts far greater than would be justified by the merits of the case (Item 597, ¶ 5; Item 650, p. 3; Item 677, p. 2).

General Motors contends that Solvent has failed to show that it could not have brought the claims against these waste generators in any of its prior amended third-party complaints and that this latest attempt to implead additional parties is an abuse of the civil litigation process (Item 595, ¶ 5). General Motors submits that these new claims are all based on transactions which occurred between fifteen and twenty-two years ago, and that information on these transactions has been available to Solvent since the beginning of this litigation (*Id.*). General Motors suggests that the current action be limited to the current parties and that Solvent should commence a new action against the fifty-two additional waste generators (*Id.*).

Solvent repeats many of the same arguments that it made in response to Olin's opposition. Specifically, Solvent contends that (1) mere delay in commencing a motion to amend, standing alone, is an insufficient basis for denying the motion, (2) the delay in resolution of claims against existing parties and the increase in litigation costs alone do not constitute undue prejudice to the nonmoving party, and (3) the interests of efficiency and of hearing all claims relating to the contamination of the subject site support impleader in this instance (Items 616 and 673). Once again, Solvent emphasizes that discovery in the remaining contribution action is still in the earliest stages, and the court has not yet issued a case management order or set a trial date. Solvent submits that if it is required to file a separate action against the fifty-two waste generators, the defendants in the new action will implead the third-party defendants in the present case, thereby requiring the existing third-party de-

2. Laidlaw has also objected to the claims contained in paragraphs 117 and 118 of the proposed fifth amended third-party complaint (Items 677 and 680). Laidlaw contends that in those paragraphs, Solvent has, for the first time, alleged that Laidlaw is responsible for some passive migration and that such a claim must fail as a matter of law. Solvent asserts that the proposed amended complaint does not on its face include a claim against Laidlaw for passive migration (Item 682). At argument, the court suggested that this is not the appropriate time to address this issue. If Laidlaw continues to believe that Solvent is bringing a passive migration claim and that such a claim must fail as a matter of law, Laidlaw should raise this objection in a motion to dismiss or a motion for partial summary judgment.

fendants to defend themselves in two identical actions (Item 673, p. 3).

ICC Industries Inc. ("ICC") has submitted a letter in support of Solvent's motion which echoes most of Solvent's arguments (Item 674). ICC adds that it would appear to be in the financial interest of the present third-party defendants to have additional parties in the present action, since their respective exposure for a portion of the cleanup expenses would be reduced accordingly (*Id.,* p. 2).

As discussed above, a trial court has the discretion to permit impleader in cases such as this. Even though Solvent has not offered an explanation as to why it could not have joined the generators before, considering the factors which I have previously discussed and also considering that the case is not close to trial, I find that the totality of the circumstances involving these additional parties warrants joining them in the present action.[3]

Particularly relevant to this portion of Solvent's motion is the *Hicks* court's observation that "although impleader may cause prejudice due to the need for additional discovery, that prejudice is sufficiently outweighed by the benefits of more efficient litigation to be gained by permitting impleader." *Hicks,* 165 F.R.D. at 379 (citations omitted). There is no question that the most efficient way to handle these claims is in a single action rather than in two parallel actions. General Motors and the other existing third-party defendants will have to incur additional transaction costs whether the claims against the generators are included in the present action or in a new one. The additional discovery will affect Solvent and the new parties more than it will affect the current third-party defendants. Solvent has the ultimate burden of proving that in the consent decree it agreed to pay a sum which exceeds its liability for the contamination; consequently, Solvent will conduct the bulk of the additional discovery. All third-party defendants will be interested in the results of this discovery, but I see no reason why they will have to spend a significant amount of time or money on the additional discovery.

Solvent has already exhibited a desire to reduce the time and expense of the additional pleadings and discovery. At the January 23 argument, counsel for Solvent stated that Solvent would stipulate to a shorter time period between the filing of the amended complaint and service on the new parties. He suggested that if any proposed third-party defendants are not served within sixty days, those parties would be out of the case. We can create a case management order with similar time- and cost-saving mechanisms.

The crucial difference between Solvent's claims against the waste generators and Solvent's claims against Olin is the generators' ability to defend themselves in the present action. There is no reason to believe that the generators' discovery efforts will be adversely affected by the fact that many of the alleged owners and operators of the site have settled. Each of these generators allegedly delivered waste materials to the site for treatment and/or disposal while either Solvent or Frontenac operated the site. Solvent, Frontenac, and Frontenac's parent company, Laidlaw, are parties in the remaining contribution action. The factor which ultimately tipped the balance in favor of Olin's opposition was the unfair discovery burden Olin would have to face because the United States has settled.

Thus, for the foregoing reasons, I grant that part of Solvent's motion which seeks to implead the fifty-two waste generators as third-party defendants. Service of the complaint shall be made within sixty (60) days of the date of this order.

### III. *Solvent's Proposal to Add a Claim Against Conrail*

█ Solvent first named Conrail as a third-party defendant in Solvent's April 6, 1994, amended third-party complaint (Item 181). That complaint alleged that Conrail is liable as the successor to Niagara Junction Railway ("NJR"), which owned a portion of

---

**3.** I do find it troubling that a number of these generators allegedly sent waste materials to Solvent between 1972 and 1978. There should have been records of these activities within Solvent's control. Why didn't Solvent discover these potentially liable parties anytime in the 13–plus years of litigation prior to this motion?

the subject site prior to April 1974 and retained an easement over a portion of the site thereafter. Conrail purchased the assets of NJR on or about April 1, 1976 (Item 615, ¶ 3). In its proposed fifth amended third-party complaint, Solvent seeks to assert an additional claim of direct liability against Conrail based on Conrail's status as an owner/operator of the site after April 1, 1976 (Item 549, ¶¶ 125–127). Specifically, Solvent contends that Conrail's ownership of the easement and Conrail's operations on the site after April 1, 1976, render Conrail liable as an owner and/or operator (Item 614, p. 2).

Conrail urges the court to deny Solvent's motion arguing that Solvent unreasonably delayed bringing the additional claim and that there is clear evidence that Solvent's motive for amending its complaint now is to force Conrail into an unfavorable settlement and to delay resolution of the actions against Conrail (Items 550 and 551). Conrail asserts that Solvent's counsel first raised the possibility of an additional claim against Conrail when he invited Conrail to discuss settlement (*Id.*, p. 8). According to Conrail, although Solvent invited Conrail to discuss settlement, Solvent did not make a specific settlement demand until March 17, 1997, only two weeks before a March 31, 1997, deadline by which any settling party could obtain contribution protection from the State (Item 551, ¶¶ 12–13). Conrail also notes that Solvent's responses to Conrail's "Second Set of Interrogatories and Document Requests" identifies over twenty potential witnesses who allegedly have information regarding Solvent's owner/operator claim, yet the responses do not identify any specific facts to which any of these potential witnesses might testify in support of the additional claim (*Id.* 551, ¶¶ 21–22). Conrail argues that the tight settlement deadline, taken together with the oppressive list of potential witnesses and the lack of any supporting facts, strongly suggests that Solvent's motive for amending its claims against Conrail is to force Conrail into settling (item 550, pp. 8–10). Finally, Conrail contends that Solvent's unreasonable delay in bringing these new claims is prejudicial because the new claims drastically change the nature of the action against Conrail, calling for far more extensive investigation, discovery, and motion practice (*Id.*, pp. 11–14).

Solvent responds by arguing that Fed. R.Civ.P. 15(a) and the case law interpreting the rule provide that the trial court should grant leave to amend a pleading to join a closely related claim where the joinder will provide for the just, speedy, and inexpensive determination of the issues, and it will not prejudice Conrail (item 614, p. 1). Solvent explains that its proposed owner/operator claim is not being made in bad faith and that Solvent did not unreasonably delay in moving to add the claim (*Id.*). Solvent asserts that during the first two years after it impleaded Conrail in this action, Solvent was engaged in vigorous and exhaustive discovery regarding the determination of liability among the first-party defendants (*Id.*, p. 5). Solvent argues that in such a complex, multi-party litigation it is not always feasible to proceed with all claims simultaneously. The court stayed discovery for approximately one year, from February 28, 1996, through January 31, 1997. On December 12, 1996, while the discovery stay was still in effect, Solvent substituted its counsel in this action (item 615, ¶ 9).

Solvent's new counsel, Mr. Harkawik, affirms that shortly after he took over the case, he became aware that Conrail had potential liability not only as a successor to NJR, but also directly as an owner and/or operator of the site after April 1, 1976 (*Id.*). Soon thereafter, Solvent learned that the State had set March 31, 1997, as the deadline for parties settling with Solvent to obtain contribution protection from the State. Mr. Harkawik affirms that shortly after he learned of this deadline, he began efforts to commence settlement negotiations with the third-party defendants, including Conrail (*Id.*, ¶¶ 10–11; Item 614, pp. 9–10). Solvent contends that Conrail's counsel repeatedly rejected Mr. Harkawik's requests to undertake settlement negotiations, made one offer of an insignificant, nuisance amount that could not be considered as the initiation of serious discussions, and two weeks before the deadline, insisted that Solvent make a written demand for settlement, which Conrail immediately rejected (Item 614, p. 4).

Solvent also contends that the proposed amendment does not prejudice Conrail. Specifically, Solvent argues that (1) this third-party action is still in the early stages of discovery and the court has not yet signed a case management order or set a trial date; (2) the owner/operator claim is intertwined with the successor liability claim, and therefore does not significantly change the nature of the action against Conrail; (3) Conrail's extensive efforts in defending against the successor liability claim do not detract from the appropriateness of the proposed amendment; and (4) Conrail will have to litigate the owner/operator claim regardless of whether this motion is granted because Solvent will bring a separate action against Conrail if necessary (*Id.*, pp. 11–16).

Rule 15(a) provides that leave to amend "shall be freely given when justice so requires." "The rule in this circuit has been to allow a party to amend its pleadings in the absence of a showing by the non-movant of prejudice or bad faith." *Block v. First Blood Associates*, 988 F.2d 344, 350 (2d Cir.1993) (citing *State Teachers Retirement Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir.1981)). The Second Circuit has held that in determining what constitutes prejudice, courts should

> consider whether the assertion of the new claim would: (1) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute, or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction.... Mere delay, however, absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend.

*Block*, 988 F.2d at 350 (internal citations omitted).

Conrail has only been a party to this litigation since April 1994. Although Solvent has failed to provide any affidavits to show that it, rather than its present attorney, only recently discovered that Conrail is potentially liable as an owner and/or operator of the site, Solvent was actively involved in discovery regarding the liability of the first-party defendants when Conrail joined the action.

The court-imposed stay on discovery went into effect less than two years after Conrail had been joined as a third-party defendant. Given the complexity of this case, Solvent's two-plus year delay is not sufficient to defeat its motion. As for Conrail's contentions that Solvent has a bad faith motive for seeking to amend, the record does not support such a finding.

In 1996 and early 1997, Solvent actively pursued settlement with many third-party defendants, particularly once the State set March 31, 1997, as the contribution protection deadline (Item 615, ¶ 10). The mere fact that Solvent informed Conrail that it intended to add an owner/operator claim against Conrail at roughly the same time as it sought to initiate settlement negotiations with Conrail does not support the inference that Solvent was merely trying to use the threat of additional claims as a club to force settlement. The State set the tight deadline for contribution protection, not Solvent. In addition, the fact that Solvent's responses to Conrail's Second Set of Interrogatories and Document Requests did not identify any witnesses, experts, or exhibits fails to prove that Solvent had an improper motive. Solvent has not yet deposed any of Conrail's employees. It seems premature to require Solvent to reveal how it would prove its owner/operator claim at trial when we are only at the pleading stage of this new claim.

Because the court has found that there is insufficient evidence of an improper motive, if the court is to deny Solvent's motion to amend its claims against Conrail, the court must find that Conrail would suffer prejudice if the motion were granted. Thus, under *Block*, Conrail must demonstrate that the new claim would either require Conrail to expend significant additional resources to conduct discovery and prepare for trial or significantly delay the resolution of the dispute. *Block*, 988 F.2d at 350. Conrail has not demonstrated either form of potential prejudice.

There is no question that Solvent's proposed new claim would expand its case against Conrail and that this expansion would result in additional investigation and discovery for both Conrail and Solvent. Nevertheless, it appears as if Conrail has exaggerated the differences between Sol-

vent's successor liability claim and its owner/operator claim. Both claims involve the same site, the same easement, the same general cause of action, and the same remedies. The time periods and the specific theories of liability in the two claims may differ, but the many shared aspects warrant hearing them in the same action. Conrail will have to defend the owner/operator claim regardless of the outcome of this motion. Because of the overlap of the issues in the two claims, the interests of judicial economy will best be achieved by hearing both claims in the same case. Furthermore, Conrail concedes that it has only conducted four depositions thus far, and not all of these were completed, and Solvent has not yet conducted any depositions regarding its claims against Conrail.

Thus, for the foregoing reasons, I grant that part of Solvent's motion which seeks to add an owner/operator claim against Conrail.

### CONCLUSION

For the foregoing reasons, this court hereby grants Solvent's motion (item 549) in part and denies it in part. Solvent may file a fifth amended third-party complaint which adds the fifty-two waste generators and amends its claims against Conrail. Solvent's amended complaint may not add Olin as a party on any owner/operator claims.

So ordered.