**The State of NEW YORK, Plaintiff,**

v.

**NIAGARA MOHAWK POWER CORPORATION and M. Wallace and Son, Inc., Defendants.**

No. 85–CV–219.

United States District Court,
N.D. New York.

July 22, 2003.

Eliot Spitzer, New York State Attorney General, Office of the Attorney General, State of New York Environmental Bureau (David A. Munro, Esq., Assistant Attorney General, of Counsel), Albany, NY, for Plaintiff.

Hiscock & Barclay, LLP (Richard R. Capozza, Esq., David M. Hehr, Esq., of Counsel), Syracuse, NY, for Defendant Niagara Mohawk Power Corporation

Green & Seifter, (Lowell A. Seifter, Esq., Douglas H. Zamelis, Esq., of Counsel), Syracuse, NY, for Defendant M. Wallace and Son, Inc.

## MEMORANDUM–DECISION AND ORDER

HOMER, United States Magistrate Judge.

Presently pending is the motion of defendant Niagara Mohawk Power Corporation ("Niagara Mohawk") for leave to file an amended answer to assert claims for contribution against co-defendant M. Wallace and Son, Inc. ("Wallace Company") as well as declaratory and injunctive relief. Docket No. 70. Niagara Mohawk also seeks leave to implead Arthur M. Wallace and Sidney R. Wallace ("the Wallaces"), the principals of Wallace Company. *Id.* Wallace Company opposes the motion. Docket No. 75. For the reasons which follow, the motion is denied.

### I. Background

Since 1925, Wallace Company has owned and operated a scrap yard ("the Site"). Compl. (Docket No. 1) at ¶ 12. The Site wholesales iron and steel scrap materials and new and used structural steel. *Id.* at ¶ 7. Niagara Mohawk utilized electrical transformers which contained polychlorinated biphenyls ("PCBs") and other hazardous chemicals. *Id.* at ¶ 11. Between 1945 and 1980, Niagara Mohawk had thousands of PCB-contaminated transformers transported to the Site for disposal by Wallace Company. *Id.* at ¶ 14. Significant quantities of PCB-laden oil contaminated the ground at the Site. *Id.* at ¶ 14.

On February 19, 1985, the State of New York ("State") filed a complaint against both Niagara Mohawk and the Wallace Company for violation of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9602 *et seq.*, and New York's common law of public nuisance and restitution. *Id.* at ¶ 2. The State sought injunctive relief as well as monetary damages. *Id.* at p. 13. In October 1987, Niagara Mohawk and the State entered into an Interim Consent Order that required Niagara Mohawk to conduct an initial investigation of hazardous substances located at the Site. Zamelis Aff. (Docket No. 79) at Ex. A. Wallace Company agreed to provide Niagara Mohawk with necessary access to the Site. *Id.* at Ex. A, ¶ 12. In November 1987, Niagara Mohawk and Wallace Company entered into an agreement whereby Wallace Company agreed to share equally in the cost of the work plan set forth in the Interim Consent Order. *Id.* at Ex. B. Niagara Mohawk completed its initial investigation in 1989 and submitted a final report to the State in June 1990. Niagara Mohawk then agreed to perform interim remedial measures at the Site pursuant to a Stipulation and Order signed by this Court on September 3, 1991. Docket No. 34. In February 1994, Niagara Mohawk and the State executed a Consent Decree which set forth a plan for the investigation and remediation of the Site. Zamelis Aff. at Ex. C. The Consent Decree was approved and adopted by this Court on August 21, 2000. Docket No. 56.

A settlement agreement which resolved all issues of contribution between Wallace Company and Niagara Mohawk was agreed to by all parties in the presence of Magistrate Judge Daniel Scanlon on March 7, 1995. Wildove Aff. (Docket No. 76) at ¶ 5; Sidney Wallace Aff. (Docket No. 78) at Ex. B. The settlement required Wallace Company to provide Niagara Mohawk with exclusive access to the Site to conduct its investigation

and remediation. *Id.* at Ex. B, ¶ 3. Wallace Company also agreed to cooperate fully in the investigation and remediation and to pay Niagara Mohawk $75,000 in exchange for release from any further liability, including contribution and cross-claims. · *Id.* at ¶¶ 6–8. This Court issued a judgment dismissing the action by reason of settlement on May 1, 1995. Docket No. 53. In accordance with the settlement agreement, Wallace Company entered into an Exclusive Access Agreement with Niagara Mohawk for the length of time necessary for Niagara Mohawk to investigate, remediate and monitor the Site. Sidney Wallace Aff. at Ex. A.

A written settlement agreement was thereafter signed by Wallace Company and the Wallaces individually but was never signed by Niagara Mohawk. *Id.* Niagara Mohawk refused to sign the agreement because it failed to provide for a deed restriction. *Id.* at Ex. C. Niagara Mohawk then submitted a proposed settlement agreement with the same terms and conditions as the first but adding a new paragraph which limited the area of the Site which Wallace Company could use at the conclusion of the remediation. *Id.* at ¶ 6. Thereafter, Niagara Mohawk erected a chain link fence around a majority of the Site. *Id.* at ¶ 23.

Niagara Mohawk conducted its Remedial Investigation/Feasibility Study (RI/FS) of the Site, which was approved by the State. In January 1999, the State issued its proposed remedial action plan for the Site followed by a thirty day public comment period. In March 1999, the State issued the Record of Decision for the Site as amended by the May 2000 Explanation of Significant Difference. In January 2002, Niagara Mohawk began its remediation of the Site. Niagara Mohawk's total cost for the investigation and remediation of the Site was in excess of $13,000,000. The remediation has been com-

pleted and the Consent Decree will be satisfied once the final engineer's report is accepted by the State.[1] Docket No. 66. On May 15, 2003, this Court set a trial date of September 3, 2003. Docket No. 66. This motion followed.

## II. Discussion

### A. Amendment of Answer

■ Fed.R.Civ.P. 15(a) requires that leave to amend be "freely given when justice so requires." Freely granting leave to amend an answer "facilitate[s] a proper decision on the merits" and identifies the material issues of the case. *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). "Absent undue delay, bad faith, dilatory tactics, undue prejudice to the party to be served with the proposed pleading, or futility, the motion should be freely granted." *Quaratino v. Tiffany & Co.,* 71 F.3d 58, 66 (2d Cir.1995).[2]

#### 1. Undue Delay

■ Undue delay alone, is usually insufficient to deny leave to amend a pleading. *Rachman Bag Co. v. Liberty Mut. Ins. Co.,* 46 F.3d 230, 234–35 (2d Cir.1995). However, when a party fails to seek leave to amend a pleading for an inordinate amount of time even though the movant had notice of the claim, the party must provide a compelling reason to justify the delay. *Matima v. Celli,* 228 F.3d 68, 81 (2d Cir.2000) (quoting *Cresswell v. Sullivan & Cromwell,* 922 F.2d 60, 72 (2d Cir.1990)); *MacDraw, Inc. v. The CIT Group Equip. Fin., Inc.,* 157 F.3d 956, 962 (2d Cir.1998) (five years without explanation); *Evans v. Syracuse City Sch. Dist.,* 704 F.2d 44, 47 (2d Cir.1983) (two years and nine months without compelling reason); *Phoenix Racing, Ltd. v. Lebanon Valley Auto Racing, Corp.,* 53 F.Supp.2d 199, 207 (N.D.N.Y.1999)

---

1. At oral argument held on July 17, 2003, the State advised that it believes the final report will be accepted within thirty days.

2. Wallace Company contends that Niagara Mohawk's motion should be denied because their proposed claim is barred by the statute of limitations. Under CERCLA, there is a three year statute of limitations for contribution claims which begins to run once a Consent Decree is

approved and entered by the court. 42 U.S.C. § 9613(g)(3) (1986). The parties submitted the Consent Decree for the Court's approval and entry in 1994. By administrative error, the Consent Decree was not adopted and entered by the Court until August 21, 2000. Docket No. 56. Niagara Mohawk filed its motion for leave to amend on May 28, 2003. Niagara Mohawk's motion is within the statute of limitations.

(Kahn, J.) (Holding that fifteen months constituted inordinate delay). Additionally, leave to amend may be denied when the amendment "would unduly delay the course of the proceedings by, for example, introducing new issues for discovery." *Grace v. Rosenstock*, 228 F.3d 40, 54 (2d Cir.2000).

■ Here, Niagara Mohawk waited eighteen years to seek leave to amend its answer to assert a cause of action for contribution against Wallace Company. Niagara Mohawk had notice from the outset of the case of its contribution claim. In its answer, Niagara Mohawk stated that its liability for investigation and remediation of the Site should be reduced "to the extent that the acts of other responsible persons cause or contributed to the harm." Ans. at ¶ 55. The Interim Consent Order stated that a right to contribution existed among the parties found jointly and severally liable under CERCLA and state law. Zamelis Aff. at Ex. A, ¶ 10. In 1987, Niagara Mohawk and Wallace Company entered into an exclusive access agreement whereby both parties acknowledged "payment to fund the work plan by Wallace Company and Niagara Mohawk shall not be deemed a waiver of and shall not preclude any defendant from pursuing counterclaims, cross-claims or third-party claims for contribution or indemnification against any other person or entity." *Id.* at Ex. B, ¶ 4. Additionally, the 1994 Consent Decree specifically reserved Niagara Mohawk's right to seek contribution from a third party. Docket No. 56 at ¶ 25. The Consent Decree also gave Niagara Mohawk contribution protection from liability associated with the release or migration of hazardous substances from the Site if it complied with the Consent Decree. *Id.* at ¶ 11.

The only excuse proffered by Niagara Mohawk is that it was distracted for eighteen years by its efforts with Wallace Company to defend the action, by its efforts to investigate and remediate of the Site, and thereafter by unsuccessful settlement negotiations with Wallace Company. Niagara Mohawk Mem. of Law (Docket No. 71) at 5. Niagara Mohawk's excuse does not justify an eighteen year delay in filing for leave to amend. Niagara Mohawk had notice of the availability of the contribution claim. Moreover, Niagara Mohawk did not engage in any additional settlement conversations with Wallace Company from 1997 until 2001. Hehr Reply Aff. (Docket No. 83) at Ex. A. There has been undue delay.

## 2. Prejudice

■ A motion for leave to amend a pleading should be denied when it would prejudice an opposing party. *Quaratino*, 71 F.3d at 66. The longer the delay, the less the non-movant must show to establish prejudice. *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir.1993). Prejudice exists when adding a new claim would: "(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely motion in another jurisdiction." *Id.*

■ Here, Niagara Mohawk's proposed amendment may require discovery into the issue of contribution. At the very least, the parties will require a hearing to determine if discovery is appropriate. Additionally, at oral argument on July 17, 2003, Niagara Mohawk stated that if their motion is granted, they may seek to file dispositive motions. Currently, there are no pending deadlines for filing of dispositive motions. A trial date has been set for September 3, 2003. Docket No. 66. Thus, this amendment would necessitate an adjustment of the trial and significantly delay an already lengthy litigation to the prejudice of Wallace Company.

Accordingly, given the extensive delay by Niagara Mohawk in bringing this motion and the prejudice to Wallace Company if the motion is granted, Niagara Mohawk's motion for leave to amend its answer to assert a claim against Wallace Company is denied.[3]

## B. Impleader

Niagara Mohawk also moves to implead the Wallaces as third-party defendants, con-

---

**3.** Given this decision, it is not necessary to address Wallace Company's contentions that the motion to amend is futile and that Niagara Mohawk acted in bad faith and with dilatory motive.

tending that as owners of Wallace Company, the Wallaces are liable under CERCLA.

 Under Fed.R.Civ.P. 14(a), a defendant may implead a third-party "who is or may be liable to [it] for all or part of the plaintiff's claim" in the main action. Fed. R.Civ.P. 14(a). A defendant may commence a third-party action only upon leave of court where, as here, the defendant seeks to commence that action more than ten days after filing its answer. *Id.* Whether to grant or deny leave to file a third-party action lies within the discretion of the court. *Beneway v. Superwinch, Inc.*, No. 00–CV–337, 2002 WL 59384, at *1 (N.D.N.Y. Jan.3, 2002). Generally, "[t]imely motions for leave to implead non-parties should be freely granted to promote [judicial] efficiency unless to do so would prejudice the plaintiff, unduly complicate the trial, or would foster an obviously unmeritorious claim." *Shafarman v. Ryder Truck Rental, Inc.*, 100 F.R.D. 454, 459 (S.D.N.Y.1984); *CSA Capital, Inc. v. Mountbatten Sur. Co.*, No. 96–CV–9714, 1997 WL 760515, at *1 (S.D.N.Y. Dec.9, 1997). A court must balance the benefit derived from allowing the impleader against the prejudice to other parties and the third-party defendants. *Oliner v. McBride's Indus., Inc.*, 106 F.R.D. 14, 20 (S.D.N.Y.1985).

 In determining whether to permit impleader, a court's consideration should include " '(1) whether the movant deliberately delayed or was derelict in filing the motion; (2) whether impleading would delay or unduly complicate the trial; (3) whether impleading would prejudice the third–party defendant; and (4) whether the proposed third-party complaint states a claim upon which relief can be granted.' " *Middle Mkt. Fin. Corp. v. D'Orazio*, No. 96–CV–8138, 1998 WL 872412, at *2 (S.D.N.Y. Dec.15, 1998) (quoting *National Westminster Bank, PLC v. Empire Energy Mgmt. Sys., Inc.*, No. 93–CV–5331(LMM), 1996 WL 709763, at *8 (S.D.N.Y. Dec.10, 1996)).

### 1. Undue Delay and Delay of Trial

 When a party unduly delays in moving to implead third-party defendants, a court may deny the motion. *New York v. Solvent Chem. Co.*, 179 F.R.D. 90, 94 (W.D.N.Y.1998). If the movant fails to offer a reasonable explanation for its delay, a court will "assume that there is no legitimate excuse and that the defendant has simply moved in a dilatory fashion." *Blais Constr. Co., Inc. v. Hanover Square Associates–I*, 733 F.Supp. 149, 158 (N.D.N.Y.1990); *Oliner*, 106 F.R.D. at 14 (six years after settlement agreement with no reasonable excuse); *Solvent Chem. Co.*, 179 F.R.D. at 95 (over ten years and no excuse).

 Niagara Mohawk waited eighteen years to implead the Wallaces. Niagara Mohawk argues that it failed to implead the Wallaces earlier because they were engaged in defending the action and in settlement negotiations with Wallace Company. Wallace Company has been a defendant in this action since the action was filed by the state in 1985. Niagara Mohawk had notice that the individual owners at Wallace Company might be liable in this action. During settlement negotiations with Magistrate Judge Scanlon, the parties acknowledged a potential for individual liability for the Wallaces and included separate signature lines for them. Sidney Wallace Aff. at ¶ 25, Ex. B. Thus, Niagara Mohawk has offered no valid reason for the eighteen year delay in moving to implead the Wallaces and, therefore, the conclusion is compelled that the instant motion for leave to implead the Wallaces was unduly delayed.

### 2. Prejudice

 If the prejudice to the potential third-party defendant outweighs the interest in judicial efficiency, a court should deny the motion to implead. *Hicks v. Long Island R.R.*, 165 F.R.D. 377, 379 (E.D.N.Y.1996). Here, the Wallaces would be prejudiced because they would be entitled to counsel separate from that for Wallace Company, and counsel would require time to prepare for trial on a case which has been pending for eighteen years. The Wallaces may also seek discovery for which a hearing would most likely be held. Additionally, Niagara Mohawk stated that it may seek leave to file dispositive motions if their motion to implead is granted even though such motions are not

presently permitted. The trial is set to commence in six weeks. Thus, impleader of the Wallaces would further delay the trial and prejudice the Wallaces.

Accordingly, Niagara Mohawk's motion for leave to implead the Wallaces is denied.

### III. Conclusion

For the reasons stated above, it is hereby

**ORDERED** that Niagara Mohawk's motion for leave to (1) file and serve an amended answer and (2) implead the Wallaces (Docket No. 70) is **DENIED** in all respects.

**IT IS SO ORDERED.**