John P. HASSAN, Plaintiff,

v.

Rodney E. SLATER, Secretary, United States Department of Transportation; Gordon Linton, Administrator, Federal Transit Administration; Virgil Conway, Chairman, New York State Metropolitan Transportation Administration; Mark Shaw, Executive Director, New York State Metropolitan Transportation Administration; Thomas Prendergast, President, Long Island Railroad, Defendants.

No. 98 CV 1955 ADS.

United States District Court, E.D. New York.

March 1, 1999.

**344**

John P. Hassan, Center Moriches, NY, Plaintiff Pro Se.

United States Attorney Office for the Eastern District of New York by Kathleen A. Mahoney, Assistant United States Attorney, Brooklyn, NY, for the Federal Defendants.

The Long Island Rail Road Company by Michael R. Ambrecht, Jamaica, NY, for the MTA Defendants.

### MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

This lawsuit arises out of the *pro se* plaintiff's dissatisfaction with a decision by the Long Island Railroad ("LIRR") and the Metropolitan Transportation Authority ("MTA") to close the train station located in Center Moriches, Long Island (the "Station"). In so doing, the plaintiff, John P. Hassan ("Hassan" or the "plaintiff"), contends that the defendants háve "force[d] residents to rely on private cars and drive to mega stations e.g. Ronkonkoma and [have] abandoned those without cars and physically unable to drive cars or even afford cars. It's their fascist yuppie mentality to reinvent things in their image."

Hassan initiated this lawsuit on March 16, 1998 against the United States Secretary of Transportation and the Administrator of the Federal Transit Administration (collectively, the "federal defendants"), and against the MTA's Chairman, the MTA's Executive Director and the LIRR's President (collectively, the "MTA defendants"). His complaint alleges that the federal defendants and the MTA defendants, acting in collusion, have violated the Americans

With Disabilities Act, 42 U.S.C. §§ 12101 ("ADA"), and the First, Fifth and Fourteenth Amendments to the United States Constitution. With the filing of the complaint, Hassan moved, by Order to Show Cause, for a temporary restraining order and preliminary injunction directing the following: (1) "That the Long Island Railroad resume or continue to stop trains and serve passengers at [the Station]"; and (2) "that LIRR stop harassment of John P. Hassan and stop expelling him from the waiting room of Penn Station in New York City."

On March 17, 1998, the day after Hassan initiated this lawsuit, the Court denied his motion for a TRO following oral argument. The plaintiff appealed the decision to the Second Circuit, which dismissed the appeal for lack of jurisdiction on May 28, 1998. On June 1, 1998, the plaintiff renewed his motion for a preliminary injunction in this Court. Upon request from the defendants, this Court established a briefing schedule for various motions, which now have been fully briefed: (1) Hassan's motion for a preliminary injunction against the closure of the Station; (2) the federal defendants' motion to dismiss the complaint; (3) the MTA defendants' motion to dismiss the Complaint; (4) Hassan's request that any preliminary injunction be made permanent; and (5) Hassan's motion to amend the complaint to add a cause of action based on a May 29, 1998 incident, when a ticket agent at the Jamaica Station of the Long Island Rail Road allegedly stated in a "mocking[ ], sarcastic[ and] ridiculing" tone over a loud-speaker that Hassan "couldn't see the schedules because he's only got one eye."

## I. BACKGROUND

According to the plaintiff, he is a disabled person within the meaning of ADA, in that he suffers from total blindness in one eye, limited vision in his other eye, arthritis, asthma and other physical infirmities. He states that he receives Veteran's Disability Compensation. As a result of his disabilities, Hassan avers that he must travel frequently to Manhattan for treatment at a veteran's hospital. Prior to closure of the Station, he routinely traveled to these treatments by taking LIRR service from the Station, which is a 1¼ mile walk from his home, to Pennsylvania Station in Manhattan.

## A. The Decision to Close the Center Moriches Station

The MTA and LIRR are public benefit corporations of the State of New York, and are charged with the responsibility of developing and implementing a unified mass transportation system for the New York metropolitan region. N.Y. Pub. Auth. Law §§ 1263(1), 1264 and 1266(5).

The Department of Transportation ("DOT") provides federal funding for capital and operating assistance to the LIRR, a commuter rail system. The Federal Transit Administration ("FTA") is the DOT component that administers the funding. 49 U.S.C. §§ 5301, 5302, 5309, 5323 and 5324. Since the LIRR receives federal financial assistance, it is subject to the ADA, the Rehabilitation Act of 1973, and DOT regulations implementing these Acts. 49 C.F.R. § 27.3, and Parts 37–38.

On or about November 13, 1996, the LIRR advised the MTA Board that it would begin necessary procedures to close certain low customer volume stations, including the Center Moriches Station. None of these stations were designated "Key Stations" by the LIRR in its Final Key Station Plan. The Court notes that DOT ADA regulations require that Key Stations be accessible to individuals with disabilities. 49 C.F.R. § 37.47(a), (c)(1). According to the MTA defendants, it selected the Center Moriches Station for possible closure because of its low customer volume, the substantial capital investment necessary to construct high-level platforms to accommodate the LIRR's new diesel fleet, alternate transportation modes within a reasonable distance, and little or no market growth potential.

The MTA held public hearings regarding the proposed closure on January 14, 21 and 22, 1997 in Holtsville, Roslyn and Glendale, New York, respectively. All three public hearing locations are accessible to people with disabilities.

After taking testimony and other evidence at the hearings, and considering comments from the public, the MTA defendants announced at the March 26, 1997 public LIRR Board meeting that ten stations would be closed, including the Center Moriches Station. The LIRR broadly disseminated this closing information to the public, including posting signs at the affected stations.

Nearly a year later, on March 16, 1998, ten stations, including the Center Moriches Station, were closed.

### B. Hassan's Complaints to the DOT

In 1997, Hassan wrote several letters to the DOT and the FTA about the upcoming closure of the Center Moriches Station and its holding of public hearings about the proposal. Following an investigation, the Director of the FTA's Office of Civil Rights issued a decision concluding that the closing of the Station was not subject to the DOT regulations and explained that the DOT had no authority to interfere in local transit operations. Hassan requested that the Secretary of Transportation review and reconsider this decision, and added an allegation concerning his expulsion from the LIRR waiting room in January 1998. On March 30, 1998, the Director of the FTA's Office of Civil Rights issued a finding adhering to the earlier decision, and indicating that Hassan's allegations concerning his expulsion from the waiting room was a new complaint which was referred back to the FTA for investigation.

### C. The Plaintiff's Complaint

As noted at the outset, Hassan initiated this lawsuit on March 16, 1998, and moved, by Order to Show Cause, for a TRO and preliminary injunction directing the following: (1) "That the Long Island Railroad resume or continue to stop trains and serve passengers at [the] Center Moriches Station"; and (2) "that LIRR stop harassment of John P. Hassan and stop expelling him from the waiting room of Penn Station in New York City."

The complaint does not delineate which factual allegations relate to which causes of action. In any event, Hassan asserts that the federal and MTA defendants have "colluded" to violate the ADA, and the First, Fifth and Fourteenth Amendments in the closing of the Station. He also maintains that he was denied access to the MTA's public hearings concerning the proposed closure. In this regard, he contends that the MTA defendants deliberately excluded him by conducting the public hearings in remote locations which were accessible only via "special transportation" that was provided at a location far from his home.

Hassan complains that with the closure of the Center Moriches Station, the only way he will be able to avail himself of LIRR train service to Manhattan for his medical treatments is by walking "four miles [from his home] to [the next closest station, the] Mastic[ ] Shirley Station ... That is an excruciating distance for me to walk." The plaintiff further asserts that he cannot afford to take a taxicab to and from the Mastic–Shirley Station.

The plaintiff also contends that the defendants' decision to close the Center Moriches Station was "strictly political," that they "skewed the passenger count" to support the decision to close it, and that they "have never made any effort to know the impact of their action on the neediest passengers." As he puts it, the defendants "are not authorized under the A.D.A.[ ] to redesign trains intentionall[y] to exclude passengers in need in areas with no other transportation but that is exactly what they deliberately connived to do in complicity and collaboration with all [defendants]."

As far as the Court can discern from a liberal reading of Hassan's papers, which are a mixture of both handwritten and single-spaced typed documents, he raises the following causes of action: (1) *An ADA claim* against the MTA and federal defendants for terminating service at the Center Moriches Station; (2) *A First Amendment/Due Process Claim* against the MTA and federal defendants for allegedly excluding him from the public hearing in January 1997; and (3) *An unspecified claim* against the MTA and federal defendants for expelling him from the Pennsylvania Station waiting area. Hassan's motion to amend the complaint to add an ADA cause of action is based on a May 29, 1998 incident, when a ticket agent at the Jamaica Station of the Long Island Rail Road allegedly stated in a "mocking[ ], sarcastic[ and] ridiculing" tone over a loudspeaker that Hassan "couldn't see the schedules because he's only got one eye."

## II. DISCUSSION

### A. The Plaintiff's Motion for a Preliminary Injunction

#### 1. *Preliminary Inunction: The Standard*

■ A preliminary injunction is considered an "extraordinary" remedy that should not be granted as a routine matter. *See JSG Trading Corp. v. Tray–Wrap, Inc.,* 917 F.2d 75, 80 (2d Cir.1990); *Hanson Trust PLC v. ML SCM Acquisition, Inc.,* 781 F.2d 264, 273 (2d Cir.1986)(preliminary injunction is "one of the most drastic tools in the arsenal of judicial remedies"); *Medical Soc'y of the State of New York v. Toia,* 560 F.2d 535, 538 (2d Cir.1977)(preliminary injunction is "an extraordinary and drastic remedy which should not be routinely granted"); *Wandyful Stadium, Inc. v. Town of Hempstead,* 959 F.Supp. 585, 591 (E.D.N.Y.1997)(accord). Ultimately, the decision to grant or deny this "drastic" remedy rests in the district court's sound discretion. *See American Exp. Financial Advisors Inc. v. Thorley,* 147 F.3d 229, 231 (2d Cir.1998);

*Molloy v. Metropolitan Transp. Auth.,* 94 F.3d 808, 811 (2d Cir.1996).

■ "The general standard for issuing a preliminary injunction requires that the movant show '(1) irreparable harm and (2) either (a) likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief.'" *Maryland Casualty Co. v. Realty Advisory Bd. on Labor Relations,* 107 F.3d 979, 984 (2d. Cir.1997) (quoting *International Dairy Foods Ass'n v. Amestoy,* 92 F.3d 67, 70 [2d Cir.1996][quoting in turn *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.,* 596 F.2d 70, 72 [2d Cir.1979]] ); *NAACP v. Town of East Haven,* 70 F.3d 219, 223 (2d Cir.1995) (quoting *Resolution Trust Corp. v. Elman,* 949 F.2d 624, 626 [2d Cir. 1991] ). In addition, Fed.R.Civ.P. 52(a) requires that the district court sufficiently set forth its findings to permit appellate review. *See Rosen v. Siegel,* 106 F.3d 28, 32 (2d Cir.1997); *Society for Good Will to Retarded Children, Inc. v. Cuomo,* 902 F.2d 1085, 1088 (2d Cir.1990).

#### a. *Closure of the Station*

■ Where, as in this action, a plaintiff seeks an injunction to "prevent government action taken pursuant to statutory authority, which is presumed to be in the public interest," the second "serious questions" prong is inapplicable; the plaintiff is required to demonstrate, in addition to irreparable harm, a likelihood of success on the merits. *See Molloy v. Metropolitan Trans. Auth.,* 94 F.3d 808, 811 (2d Cir.1996)(citing *Able v. United States,* 44 F.3d 128, 130 [2d Cir.1995][per curiam] ). The LIRR's decision to close the Center Moriches Station was taken pursuant to statutory authority, namely, the MTA's enabling statute, N.Y. Pub. Auth. L. § 1266. Under this enabling statute, the MTA is authorized to "do all things it deems necessary, convenient or desirable to manage,

control and direct the maintenance and operation of its transportation facilities." N.Y. Pub. Auth. L. § 1266(5). Pursuant to N.Y. Pub. Auth. L. § 1266(5), the LIRR, as a subsidiary public benefit corporation of the MTA, has all of the privileges, immunities and exemptions of the MTA.

Because the Center Moriches closing was governmental action taken in the public interest and pursuant to statutory authority, only the "likelihood of success" standard is applicable, and Hassan has the burden of showing that likelihood, as well as irreparable harm. *See Molloy v. MTA,* 94 F.3d at 811 (heightened standard applicable where the MTA's installation of ticketing machines was pursuant to provisions in enabling statute, N.Y. Pub. Auth. Law § 1266, authorizing collection of fares and operations of its facilities as the MTA deems convenient); *New York Urban League, Inc. v. State of New York,* 71 F.3d 1031, 1036 n. 7 (2d Cir.1995).

■ This heightened standard is applicable for another reason. "The typical preliminary injunction is prohibitory and generally seeks only to maintain the status quo pending a trial on the merits." *Tom Doherty Assoc. v. Saban Entertainment Inc.,* 60 F.3d 27, 34 (2d Cir.1995)(citing *Abdul Wali v. Coughlin,* 754 F.2d 1015, 1025 [2d Cir.1985] ). "A mandatory injunction, in contrast, is said to alter the status quo by commanding some positive act." *Id.* at 1025. The Second Circuit has stated that the distinction between mandatory and prohibitory injunctions is important "because we have held that a mandatory injunction should issue 'only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief.' " *Doherty,* 60 F.3d at 34 (quoting *Abdul,* 754 F.2d at 1025); *compare with Innovative Health Sys. Inc. v. City of White Plains,* 117 F.3d 37, 43 n. 6 (2d Cir.1997)(distinction between mandatory and prohibitory injunctions is often "more semantical than substantive."). Thus, in cases involving a mandatory injunction, "the district court should not apply the less rigorous fair-ground-for-litigation standard and should only grant the injunction if the moving party establishes, along with irreparable injury, a likelihood of success on the merits." *Id.* at 43 n. 6. Here, since the Station already has been closed, an order granting the plaintiff's motion to direct its opening would alter the status quo.

As such, Hassan faces a heightened burden. He must establish both irreparable harm and a likelihood of success on the merits.

### b. *Irreparable harm*

■ A showing of irreparable harm is considered the "single most important requirement" in satisfying the standard. *See Alliance Bond Fund, Inc. v. Grupo Mexicano de Desarrollo, S.A.,* 143 F.3d at 696; *Reuters Ltd. v. United Press Int'l, Inc.,* 903 F.2d 904, 907 (2d Cir.1990)(recognizing that "irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction"). "A moving party must show that the injury it will suffer is likely and imminent, not remote or speculative, and that such injury is not capable of being fully remedied by money damages." *National Association for Advancement of Colored People, Inc. (NAACP) v. Town of East Haven,* 70 F.3d 219, 224 (2d Cir.1995)(citing *Tucker Anthony Realty Corp. v. Schlesinger,* 888 F.2d 969, 975 [2d Cir.1989] ); *Weinberger v. Romero–Barcelo,* 456 U.S. 305, 312, 102 S.Ct. 1798, 72 L.Ed.2d 91 (1982)("The Court has repeatedly held that the basis for injunctive relief in the federal courts has always been irreparable injury and the inadequacy of legal remedies").

■ Hassan contends that if he is denied injunctive relief, he will suffer irreparable harm in that the only way he will be able to avail himself of LIRR train service to Manhattan—a trip he must make in order to obtain medical treatments—is by walking "four miles [from his home] to [the next closest station, the] Mastic[ ] Shirley

Station ... That is an excruciating distance for me to walk." The plaintiff further states that he cannot afford the taxicab ride to and from the Mastic–Shirley Station.

While the Court certainly sympathizes with Hassan's difficult situation, it nevertheless concludes that he will not be "irreparably harmed" in the legal sense if the Station is not ordered to be opened. The blind, visually impaired and otherwise disabled can still avail themselves of train service at other LIRR stations. While it is true that Hassan and others will no longer be able to board the train to Manhattan at the Center Moriches location, they may utilize the LIRR service at other nearby stations. The Court agrees that having to walk 4 miles to the Mastic Shirley station is considerably inconvenient, and that the alternative of taking a cab from his home to the Mastic Shirley station is costly. "However, we cannot say that the extra inconvenience rises to the level of irreparable harm such that the LIRR must be stopped from implementing its plan." *Molloy v. Metropolitan Trans. Auth.*, 94 F.3d at 811 (citing *Jayaraj v. Scappini*, 66 F.3d 36, 39 [2 Cir.1995][noting injuries such as expenditures of money, time, and energy, are not enough to warrant preliminary injunction]). For example, in *Molloy*, the Second Circuit reversed the district court's holding that the blind and visually impaired plaintiffs would be irreparably harmed by the LIRR's replacement of human ticket clerks at certain stations with machines, thereby necessitating that the blind and visually impaired purchase tickets on board.

Also, the plaintiff's motion for a preliminary injunction is undermined by his considerable delay in making it. The MTA held public hearings regarding the proposed closure of the Station on January 14, 21 and 22, 1997 in Holtsville, Roslyn and Glendale, New York, respectively. All three public hearing locations are fully accessible to people with disabilities. Has-

san does not deny his awareness of the hearings, although he does complain that they were held in inconvenient locations and that the MTA should have provided him with transportation. The MTA defendants announced at the March 26, 1997 public LIRR Board meeting that ten stations would be closed, including the Center Moriches Station, and broadly disseminated this closing information to the public, including posting signs at the affected stations. However, it was not until approximately one year later, on March 16, 1998, that Hassan moved for injunctive relief.

"The Second Circuit has observed that '[p]reliminary injunctions are generally granted under the theory that there is an urgent need for speedy action to protect the plaintiffs' rights. Delay in seeking enforcement of those rights, however, tends to indicate at least a reduced need for such drastic, speedy action .... Although a particular period of delay may not rise to the level of laches and thereby bar a permanent injunction, it may still indicate an absence of the kind of irreparable harm required to support a preliminary injunction.' ... The Second Circuit [has] further held that '[l]ack of diligence, standing alone, may ... preclude the granting of preliminary injunctive relief, because it goes primarily to the issue of irreparable harm ....' " *Costello v. McEnery*, 767 F.Supp. 72, 78 [S.D.N.Y.1991](citing *Borey v. National Union Fire Insurance Company of Pittsburgh*, 934 F.2d 30, 33–34 [2d Cir.1991]; *Majorica, S.A. v. R.H. Macy & Co., Inc.*, 762 F.2d 7, 8 [2d Cir.1985]). "This delay in seeking relief bolsters the Court's conclusion that there has been an insufficient showing of irreparable harm to justify issuance of a preliminary injunction." *Shady v. Tyson*, 5 F.Supp.2d 102, 108 (E.D.N.Y.1998) (citations omitted).

Accordingly, the Court concludes that Hassan has failed to establish that he will suffer irreparable harm due to the closure of the Center Moriches Station.

### c. *Likelihood of Success*

The second step of the inquiry requires that the movant demonstrate a likelihood of success on the merits. As stated above, the plaintiff clearly is unable to establish irreparable harm and therefore is not entitled to equitable relief no matter how likely his chances of success on the merits. However, to complete the record, the Court notes that, in its opinion, Hassan has not established a likelihood of success on the merits. In fact, as set forth more fully below, the Court finds that his claims fail as a matter of law.

### (i) *The ADA Claim Against the MTA Defendants*

Hassan's primary contention is that the closure of the Station violates the ADA. The ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services ... of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Failure to make "key stations" in rapid rail and light rail systems "readily accessible to individuals with disabilities, including individuals who use wheelchairs," constitutes discrimination under Section 12132. 42 U.S.C. § 12147(b)(1). Accordingly, Department of Transportation ADA regulations required LIRR's Key Stations to be accessible to individuals with disabilities. 49 C.F.R. § 37.47(a), (c)(1). With regard to train stations constructed prior to enactment of the ADA, the ADA requires only that designated "key stations" be made accessible to individuals with disabilities. 42 U.S.C. § 12147(b). Under 42 U.S.C. § 12162(e)(2)(A)(iii):

> Each commuter authority shall designate the key stations in its commuter rail transportation system, in consultation with individuals with disabilities and organizations representing such individuals, taking into consideration such factors as high ridership and whether such station serves as a transfer or feeder station. Before the final designation of

key stations under this clause, a commuter authority shall hold a public hearing.

Rail operators enjoy "wide discretion ... in identifying key stations." 49 CFR Pt. 37, App. D.

■ To state a claim under the ADA, "a plaintiff is expected to show that: (1) he or she is a 'qualified individual with a disability'; (2) he or she is being excluded from participation in, or being denied the benefits of some service, program, or activity by reason of a disability; and (3) the entity which provides the service, program or activity is a public entity." *Burgess v. Goord,* No. 98 Civ.2077, 1999 WL 33458, *6 (S.D.N.Y. Jan. 26, 1999) (citation omitted). "Public entities are prohibited under the ADA from affording to qualified individuals with disabilities opportunities to participate in or benefit from benefits or services that are not equal to the opportunities afforded to nondisabled individuals." *Id.* (citing 28 C.F.R. § 35.130[b] ). Here, the Court assumes that Hassan has adequately pleaded the first and third elements, leaving open the question of the second element: whether he was "excluded from participation in, or being denied the benefits of [transportation on the LIRR] by reason of a disability."

■ In the Court's view, Hassan's contention that the closing of the Center Moriches Station constituted a denial of benefits by reason of a disability fails as a matter of law. Hassan is not prevented from using any of the other LIRR stations by reason of a disability. Nor has he adequately alleged that he was discriminated against or prevented from participating in any mode of transportation because of his disability. The fact that Hassan lives four and a half miles away from the next closest train station, and that closure of the Center Moriches Station makes it more difficult for him to travel to Manhattan, is not tantamount to stating a claim of exclusion or discrimination. The plaintiff's conclusory allegations

that his rights under the ADA were violated are thus insufficient to state a claim under the statute.

Moreover, based on the record currently before it, the Court cannot conclude that the selection of the key stations, or the exclusion of Center Moriches from designation as a key station, was violative of the ADA. It does not appear that the ADA requires the MTA defendants to keep all of its stations open, or even to make all of its stations fully accessible to people with disabilities. Rather, the ADA only requires that they make new stations and its designated key stations readily accessible to and usable by people with disabilities. *See* 42 U.S.C. § 12162(e)(2).

In sum, Hassan has not shown, or even adequately alleged, that the MTA defendants excluded him, or any other disabled person, from the benefit of services on the basis of disability. On this record, it appears that the Station closing affects all potential users, not merely disabled users.

### (ii) *The ADA Claim Against the Federal Defendants*

The Court will assume, for purposes of this decision only, that the federal government is not immune from suit despite the absence of an unequivocal waiver of sovereign immunity. Giving the complaint and supporting papers a liberal construction, Hassan apparently seeks an Order from the Court directing the federal defendants to enforce the ADA standards against the LIRR and MTA, or holding them liable for failing to undertake such enforcement.

As demonstrated in the exhibits submitted by both sides, Hassan pursued the administrative remedies available to him through the DOT ADA complaint processing and enforcement procedures. 49 C.F.R. Part 27, Subpart C. The DOT and FTA considered and investigated his complaint, and concluded that the LIRR and MTA did not violate the ADA by closing the Station or by conducting the public hearings, and that there was no action that the DOT could properly take with respect to the closing of the station. As noted above, it does not appear that the MTA defendants have violated the ADA in the Station closure, and the Court cannot state that the federal defendants were erroneous in their conclusions.

For the foregoing reasons, the plaintiff failed to prove a likelihood of success on the merits and Hassan's motion for a preliminary injunction directing the reopening of the Center Moriches Station is denied in all respects.

### 2. *LIRR's Alleged Harassment and Expulsion of Hassan from the Waiting Room of Penn Station*

Hassan also asks the Court to issue an Order "enjoining defendants .... from ... harassing John P. Hassan and expelling him from LIRR waiting room at Penn Station in New York City until a final disposition of the merits of the above entitled action." The defendants do not directly oppose this aspect of the plaintiff's motion for a preliminary injunction, perhaps because it is mentioned in passing in Hassan's handwritten Order to Show Cause. The Court cannot discern the exact nature of this claim because Hassan does not explain the circumstances surrounding the purported harassment and expulsion; the manner in which he was allegedly harassed and expelled; whether such expulsion or harassment has happened more than once; who expelled him and in what capacity; or the legal basis for his claim. Thus, even assuming Hassan's allegations to be true, the Court cannot determine whether Hassan has a viable cause of action. For this reason, the Court denies this aspect of the motion for a preliminary injunction, without prejudice and with leave to renew upon an application supplying the foregoing details.

### B. **The Federal and MTA Defendants' Motions to Dismiss the Complaint**

#### 1. *12(b)(6) Motion to Dismiss for Failure to State a Claim: The Standard*

On a motion to dismiss for failure to state a claim, the Court should dismiss

the complaint pursuant to Rule 12(b)(6) if it appears beyond doubt that the plaintiffs can prove no set of facts in support of their complaint which would entitle them to relief. *S.E.C. v. U.S. Environmental, Inc.*, 155 F.3d 107, 110 (2d Cir.1998); *Northrop v. Hoffman of Simsbury, Inc.*, 134 F.3d 41 (2d Cir.1997)(quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99 [1957] ). It is not the Court's function to weigh the evidence that might be presented at a trial; instead, the Court must merely determine whether the complaint is legally sufficient. *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir.1985). Thus, the Court must accept the allegations of the complaint as true, and construe all reasonable inferences in favor of the plaintiffs. *Connell v. Signoracci*, 153 F.3d 74 (2d Cir. 1998); *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir.1996); *LaBounty v. Adler*, 933 F.2d 121, 123 (2d Cir.1991). Further, district courts should "construe pro se complaints liberally, applying less stringent standards than when a plaintiff is represented by counsel." *Elliott v. Bronson,* 872 F.2d 20, 21 (2d Cir.1989)(per curiam); *see also Alexandre v. Cortes*, 140 F.3d 406, 408 (2d Cir.1998).

2. *The ADA claim against the MTA and federal defendants for terminating service at the Center Moriches Station*

As noted above in the discussion of the motion for a preliminary injunction, Hassan has not stated a claim for a violation of the Americans with Disabilities Act with regard to the LIRR's decision to close the Center Moriches Station. (omitted). Even reviewing the submissions of the pro se plaintiff "liberally, and ... interpret[ing] them to raise the strongest arguments that they suggest" *Soto v. Walker,* 44 F.3d 169, 173 (2d Cir.1995), he fails to state an ADA claim. For this reason, the defendants' motion to dismiss the ADA claim concerning closure of the Station is granted.

3. *The First Amendment/Due Process Claims Concerning the January 1997 Hearing*

Hassan raises free speech and due process claims stemming from his alleged exclusion from the public hearing in January 1997. Even assuming all the facts in the complaint and accompanying documents to be true, both claims fail as a matter of law and must be dismissed.

■ According to the complaint, Hassan was "denied equal access to the MTA/ LIRR Public Hearing to which they provided special transportation for selected passengers and deliberately and knowingly excluded me and others who do not have cars to get to the remote location of the hearing." Even a liberal reading of this contention fails to state either a due process or free speech violation; at best, Hassan complains that he was not personally provided with public transportation to the hearing. However, he acknowledges that there was a public hearing regarding the proposed closure, and that the public was notified of such hearing. He does not allege that had he arrived at the location he would have been barred from entrance, or been prohibited from expressing his views.

Moreover, Hassan's assertion that he was denied access to the hearing and an opportunity to speak is undermined by the exhibits he supplies to the Court. One such exhibit is his letter to the Deputy Director of the MTA, Douglas R. Sussman, dated January 1997. In this letter, Hassan acknowledges that Sussman "says that I may ... be allowed a two minute statement either before the LIRR Committee or the full MTA Board." Hassan further states in his letter that when he "asked permission to read a four-page written statement at the public hearing ... Sussman said that I should mail him a copy and he will present it to the MTA Board." His letter also states that the "MTA or LIRR is providing free transportation by private busses to and from the public hearing [from] the Ronkonkoma station," although he complains that "they refuse to provide any transportation for residents of the four areas on the Montauk Branch" of the

LIRR. In the Court's view, Hassan's complaint fails to state either free speech or due process claim, and the exhibits attached to the complaint undermine any possible cause of action. For these reasons, Hassan's First Amendment/due process claims are dismissed in their entirety.

### 4. LIRR's Alleged Harassment and Expulsion of Hassan from the Waiting Room of Penn Station

The defendants apparently do not directly move to dismiss Hassan's claim stemming from his expulsion from the LIRR waiting room at Penn Station in New York City. Nevertheless, for the reasons stated in the portion of the decision regarding the motion for a preliminary injunction, this claim is dismissed, without prejudice and with leave to replead.

### C. Hassan's Request That Any Preliminary Injunction Be Made Permanent

In view of the foregoing, Hassan's request that any preliminary injunction be made permanent is also denied in all respects.

### D. Hassan's Motion for Leave to File an Amended Complaint

Hassan moves to amend the complaint to add an ADA claim based on an incident on May 29, 1998 when a ticket agent at the Jamaica Station of the Long Island Rail Road allegedly stated in a "mocking[ ], sarcastic[ and] ridiculing" tone over a loudspeaker, that Hassan "couldn't see the schedules because he's only got one eye."

"At the outset, the Court notes that plaintiff's proposed additions to his complaint principally recite transactions, occurrences or events that have transpired since the date of the pleading sought to be supplemented. The plaintiff's motion therefore is technically categorized under Rule 15(d) of the Federal Rules of Civil Procedure, as opposed to under Rule 15(a)." *Katzman v. Sessions,* 156 F.R.D. 35, 37–38 (E.D.N.Y.1994). In any event,

"[t]he standard for the exercise of discretion on a motion to supplement the pleadings [under Rule 15(d) ] is the same as that for ... a motion to amend a complaint under Rule 15(a)." *Id.* at 38 (citations and internal quotation marks omitted).

Rule 15(a) provides that. "leave [to amend a pleading] shall be freely given when justice so requires." *See also Zahra v. Town of Southold,* 48 F.3d 674, 685 (2d Cir.1995); *Block v. First Blood Associates,* 988 F.2d 344, 350 (2d Cir.1993). Nevertheless, leave to amend is not granted automatically or reflexively. The Supreme Court has stated that denial of a Rule 15(a) motion may be appropriate in instances of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] *futility of the amendment* ...." *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)(emphasis added); *accord Zahra,* 48 F.3d at 685; *Block,* 988 F.2d at 350; *Ruffolo v. Oppenheimer & Company,* 987 F.2d 129, 131 (2d Cir.1993).

■ Application of these standards compels the conclusion that leave should be denied on grounds of futility. The Court does not doubt Hassan's characterization of the ticket agent's alleged remark as "humiliating, degrading and insulting." Nevertheless, the Court does not perceive any legal cause of action under the ADA arising from its utterance on a single occasion. The motion for leave to amend the complaint to add a cause of action based on this event is therefore denied.

Finally, the Court observes that the plaintiff has not requested leave to file an amended complaint in the event the Court grants the defendants' motions to dismiss. However, the Second Circuit has suggested that pro se plaintiffs should have at least one, post-dismissal opportunity to state their claims as best they can. *See, e.g., DeCarlo v. Fry,* 141 F.3d 56, 62 (2d Cir.1998)(citing *Branum v. Clark,* 927 F.2d

698, 705 [2d Cir.1991]["A pro se complaint is to be read liberally. Certainly the court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."][citation omitted] ). Therefore, the Court sua sponte grants Hassan leave to file an amended complaint. Should the plaintiff wish to do so, he must file such an amended complaint within twenty days from the date of this Order.

III. CONCLUSION

After reviewing the parties' submissions and for the reasons set forth above, it is hereby

ORDERED, that the plaintiff's motion for a preliminary injunction directing the reopening of the Center Moriches Station is denied in all respects; and it is further

ORDERED, that the plaintiff's motion for a preliminary injunction "enjoining defendants .... from ... harassing John P. Hassan and expelling him from LIRR waiting room at Penn Station in New York City until a final disposition of the merits of the above entitled action" is denied without prejudice and with leave to renew in keeping with the Court's instructions; and it is further

ORDERED, that the defendants' motions to dismiss the complaint are granted and the complaint is hereby dismissed, except that with regard to the plaintiff's claim stemming from his expulsion from the LIRR waiting room at Penn Station in New York City, the dismissal is without prejudice and with leave to replead in keeping with the Court's instructions; and it is further

ORDERED, that the plaintiff's request that any preliminary injunction be made permanent is denied in all respects; and it is further

ORDERED, that the plaintiff's request for leave to file an amended complaint to add a claim based on the May 29, 1998 incident is denied; and it is further

ORDERED, that in view of the plaintiff's *pro se* status, the Court sua sponte grants leave to file an amended complaint; and it is further

ORDERED, that should the plaintiff so desire, he must file such an amended complaint within twenty days from the date of this Order; and it is further

ORDERED, that the plaintiff is hereby advised that should he decline to file such an amended complaint as to the dismissed claims, the complaint will be deemed dismissed in its entirety and the Clerk of the Court will be directed to close this case.

SO ORDERED.