In re David A. YOUNG, Jr., Debtor.

Kovalsky–Carr Electric Supply
Co., Inc., Plaintiffs,

v.

David A. Young, Jr., Defendant.

Bankruptcy No. 03–22426.
Adversary No. 03–2161.

United States Bankruptcy Court,
W.D. New York.

Sept. 2, 2004.

Kenneth W. Gordon, Gordon & Schaal, Rochester, NY, for Debtor and Defendant.

Louis A. Ryen, Lacy, Katzen, et al, Rochester, NY, for Plaintiff.

## DECISION & ORDER

JOHN C. NINFO, II, Chief Judge.

### BACKGROUND

On June 17, 2003, David A. Young, Jr. (the "Debtor"), filed a petition initiating a Chapter 7 case. On the Schedules and Statements required to be filed by Section 521 and Rule 1007, the Debtor indicated that: (1) he had been an officer, director and employee of Reynolds Electrical Contractors, Inc. ("Reynolds"), which ceased doing business in the fall of 2002; and (2) Kovalsky–Carr Electric Supply Co., Inc. ("Kovalsky") held a 2002 judgment against him in the amount of $44,043.00 that was a lien against his residence (the "Kovalsky Judgment").

On September 18, 2003, Kovalsky commenced an Adversary Proceeding against the Debtor that objected to his discharge pursuant to Sections 523(a)(4) and/or 523(a)(6).[1] The Complaint in the Adver-

---

1. Sections 523(a)(4) and (a)(6) provide that:
   Sec. 523.—Exceptions to discharge
   (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

sary Proceeding alleged that: (1) from February 2001 to July 2001, Reynolds purchased materials from Kovalsky that it used in connection with a number of projects for the improvement of real property in the State of New York; (2) Reynolds received full payment from its customers for the construction services that it performed and the materials that it supplied in connection with those projects, including the materials purchased from Kovalsky; (3) Reynolds was required to hold those receipts from customers on a per project basis as trust funds under the provisions of Article 3A of the New York State Lien Law (the "Lien Law") for the benefit of the laborers, materialmen and other trust fund beneficiaries, including Kovalsky, on each of the respective projects; (4) Reynolds failed to pay Kovalsky the full amounts due for the materials it had supplied; (5) Reynolds, as a trustee, failed to keep the necessary books and records that were required by the Lien Law; (6) the Debtor was a responsible individual and trustee under the Lien Law who, along with Reynolds, breached his fiduciary duties by causing or allowing the proceeds received from customers on projects where Kovalsky's materials were utilized to be diverted and not paid to Kovalsky or other proper trust fund beneficiaries on those projects; and (7) the Debtor's discharge should be denied as a result of this diversion of trust funds and his breach of the fiduciary duties required by the Lien Law.

On October 17, 2003, the Debtor interposed an Answer to the Complaint which alleged that the Debtor was: (1) not a responsible individual and a trustee under the Lien Law, since he had no involvement with the financial affairs of Reynolds, including receiving and disbursing funds

from customers; and (2) unaware of whether Reynolds maintained the necessary books and records required by the Lien Law, or whether it had utilized any funds that it received from customers on projects where Kovalsky had supplied materials for purposes other than to pay the laborers, materialmen and the other direct and proper expenses of those particular projects, since he was not involved with the financial affairs of Reynolds, including receiving and disbursing funds from customers.

On March 9, 2004, the Debtor filed a Motion to Amend its Answer and for Summary Judgment (the "Motion for Summary Judgment"). The Motion for Summary Judgment alleged that: (1) the Debtor had obtained possession of and had reviewed the project files and related records of Reynolds, specifically with respect to those projects for the improvement of real property where Kovalsky had supplied materials but had not been paid; (2) by September 26, 2001, Reynolds had been paid in full by all of its customers for the projects on which Kovalsky had supplied materials but had not been paid; (3) Reynolds had completed all of the projects for the improvement of real property that included materials supplied by Kovalsky by no later than September 25, 2001; (4) all of the invoices rendered by Kovalsky to Reynolds were due and payable within 30 days; and (5) since the last unpaid invoices received from Kovalsky on the projects that were completed on or before September 25, 2001 were received no later than September 25, 2001, the latest date for payment of those invoices would have been October 25, 2001.

The Motion for Summary Judgment further asserted that: (1) Section 77(2) of the

---

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny;

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity[.]

Lien Law provides that a trust fund beneficiary must commence a diversion of trust fund claim within one year following the later of the completion of the project or the date on which payment in full was due; (2) under Section 77(2) of the Lien Law, Kovalsky was required to bring a diversion of trust fund action against the Debtor by no later than October 25, 2002, one year after its last possible invoice was due; (3) Kovalsky failed to bring a diversion of trust funds action against the Debtor within that period, or even before the Debtor filed his petition on June 17, 2003; and (4) allowing the Debtor to amend his Answer to include an affirmative statute of limitations defense was clearly within the Court's discretion, since the Adversary Proceeding was still in the discovery stage, it was not on the eve of trial, it would not unduly prejudice Kovalsky the plaintiff, and the potential statute of limitations defense was even raised and discussed by the Court at a pretrial conference.

On April 23, 2004, Kovalsky interposed opposition to the Motion for Summary Judgment that also requested that the Court enter an order granting it summary judgment (the "Cross-motion for Summary Judgment"), which asserted that: (1) Kovalsky held the Kovalsky Judgment against the Debtor in the amount of $44,043.09, representing the amount due from Reynolds for the material supplied to it which was based upon an Affidavit of Confession of Judgment signed by the Debtor; (2) contrary to his assertions, the Debtor was involved in the financial affairs of Reynolds, as evidenced by the fact that during the period from February 2001 through July 2001, he had signed several of the checks Reynolds issued to vendors; (3) the information supplied by the Debtor was not sufficient to prove that all of the materials sold to Reynolds by Kovalsky from February 2001 through June 2001 were in fact incorporated into projects for the improvements of real property prior to October 25, 2001, or, as required by the Lien Law, specifically when the materials were incorporated into real property improvements; (4) there is a presumption that Reynolds and any responsible individuals associated with Reynolds, such as the Debtor, as trustees, diverted trust funds when they failed to keep and/or produce the necessary books and records required by the Lien Law; (5) Reynolds received the full amounts due from its customers but failed to pay all of its trust fund beneficiaries, including Kovalsky; (6) Kovalsky was entitled to summary judgment, assuming that its Judgment against the Debtor is nondischargeable, because the Debtor had failed to rebut the presumption of diversion that arose from the failure to pay Kovalsky, a trust fund beneficiary, after Reynolds had incorporated its materials into real property improvement projects and been paid for those improvements; (7) the Debtor's request to amend his Answer should be denied because allowing a statute of limitations defense would prejudice Kovalsky, which had spent considerable sums of money in the Adversary Proceeding specifically rebutting a number of the Debtors spurious defenses.

## DISCUSSION

### I. General

For the last thirteen years in the Rochester Division of the Bankruptcy Court of the Western District of New York, the one year statute of limitations for the commencement of a trust fund diversion action under Section 77(2) of the Lien Law has been discussed in a number of Section 523(a)(4) Adversary Proceeding pretrials. However, this is the first time that a litigant has requested that the Court decide the applicability of the statute in such an Adversary Proceeding. As in so many

other cases of first impression, it may be that the issue was not presented to the Court for decision because: (1) the underlying facts of completion and the last date when payment was due were not clear; (2) the parties may have otherwise settled the matter; or (3) for any number of reasons, the debtor did not elect to fully defend the Adversary Proceeding.

## II. *The Request to Amend the Debtor's Answer*

▮ The Court, in its discretion, grants the Debtor's request to amend its Answer to include a Section 77(2) Lien Law statute of limitations defense, for the following reasons: (1) the statute of limitations issue was informally raised by the Court at a pretrial conference, so that Kovalsky was alerted to the possible applicability and availability of the defense early in the Adversary Proceeding; (2) the Adversary Proceeding is still in the discovery stage, and has not yet been set down for trial; and (3) the Court does not find that there has been or would be any significant prejudice to Kovalsky. *See, Block v. First Blood Associates,* 988 F.2d 344, 350 (2d Cir.1993).

## III. *Statute of Limitations Defense*

In *In re Dunn,* 50 B.R. 664 (Bankr. W.D.N.Y.1985) (*"Dunn"*), Bankruptcy Judge Edward D. Hayes published a Memorandum and Decision that is most helpful in analyzing the applicability of a State statute of limitations where: (1) certain state law claims or causes of action were not commenced or prosecuted to final determination prior to the filing of a bankruptcy petition; and (2) the creditor holding those claims or causes of action asserts that it holds a debt that is nondischargeable under one of the subsections of Section 523.

In *Dunn*: (1) a creditor, General Electric Credit Corporation ("GECC"), objected under Section 523(a)(6), to the discharge of a debt, alleging that the debtor had converted the proceeds of the disposition of several trucks in which GECC held a perfected security interest; (2) the debtor had filed a bankruptcy petition on January 3, 1984, more than five years after the alleged act of conversion had taken place on August 31, 1978; (3) GECC apparently had no other claim or cause of action against the debtor other than its conversion claim and cause of action; (4) the New York State Statute of Limitations for commencing a conversion cause of action was three years, so that it had expired on or before September 1, 1981 prior to the filing of the debtor's petition; and (5) Judge Hayes determined that there was no "debt" owed by the debtor to GECC that could be determined to be nondischargeable under Section 523(a)(6), because: (a) Section 523(a) requires that the Court determine whether a debt is nondischargeable; (b) Section 101(11) defines debt as a liability on a claim; (c) Section 101(4) defines a claim as a right to payment; (d) Section 502(b)(1) provides for the allowance of a claim, unless the claim is unenforceable against the debtor under any agreement or applicable law for any reason other than because the claim is contingent or unmatured; (e) the legislative history to Section 502(b)(1) indicated that disallowance is required if the claim is unenforceable as against the debtor for any reason including usury, unconscionability or the failure of consideration; and (f) in the opinion of Judge Hayes, a valid statute of limitations defense also make the claim unenforceable against the debtor, and, therefore, there was no right to payment, claim and debt that the Court could determine to be nondischargeable.

■ I agree with and adopt the analysis of Judge Hayes in the *Dunn* case as it applies to Adversary Proceedings brought under Section 523(a)(4) that allege that an Article 3A Lien Law trust fund diversion claim is nondischargeable. Therefore, when the only claim or cause of action that a trust fund beneficiary claimant has against the debtor is for a diversion of trust funds, and the New York Statute of Limitations provided for by Section 77(2) of the Lien Law has expired prior to the filing of the debtor's petition, this Bankruptcy Court will not inquire into the other elements under the Lien Law and Section 523(a)(4) that might otherwise result in it determining that the debtor had diverted trust funds, because there is no right to payment, enforceable claim or debt due from the debtor.

Although one could argue that a statute of limitations defense is only an affirmative and procedural defense under state law, which the debtor might not have raised in a State Court Proceeding, this Court does not find that to be a compelling argument once the debtor has raised the statute of limitations defense in the Section 523 Adversary Proceeding. This Court is also aware that some other courts believe that the issues of an enforceable claim should be left to the State Courts after the separate issues of diversion of trust funds, breach of fiduciary duty and nondischargeability are determined in the Bankruptcy Court. This Court would see that as an unnecessary and wasteful use of the time and money of the litigants and the time of the Bankruptcy and State Courts.

■ On the other hand, even if the one year statute of limitations under Section 77(2) of the Lien Law expired prior to the filing of the debtor's petition, if the trust fund beneficiary plaintiff in the Section 523(a)(4) Adversary Proceeding has an enforceable obligation, and thus a right to payment, enforceable claim and debt due from the debtor, under any legal theory when the bankruptcy case is commenced (such as having an enforceable state court judgment, valid contractual obligation or written guaranty), that trust fund beneficiary plaintiff will have an opportunity in this Court to prove that the debt is nondischargeable under one of the subsections of Section 523. In the case of an alleged trust fund diversion under the Lien Law, that would be under Section 523(a)(4). *See,* Alan M. Ahart and Stacy M. Hopkins, *The Role of Nondischargeability Law in Dischargeability Proceedings: Unenforceable Obligations must not Survive Discharge while Enforceable Obligations may be Excepted from Discharge,* 7 J. Bankr.L. & Prac. 161 (1998).

■ Since Kovalsky holds the prepetition, valid and enforceable Kovalsky Judgment against the Debtor for the amounts due for the unpaid for materials that Kovalsky supplied to Reynolds, it has the opportunity in this Adversary Proceeding to demonstrate to the Court that the debt evidenced by the Judgment should be nondischargeable, in whole or in part, because the Debtor was a trustee under the New York State Lien Law who diverted trust funds.

IV. *Summary Judgment Motions*

■ The Motion for Summary Judgment is denied, for the following reasons: (1) the Court in this Decision & Order has determined that the Debtor does not have a valid Section 77(2) statute of limitations defense; (2) the Debtor has not clearly demonstrated that there was no diversion of trust funds by Reynolds on projects for the improvement of real property where materials supplied by Kovalsky were incorporated into the project, which is the Debtor's burden to demonstrate, should it be determined that he was a responsible

individual and a trustee under the Lien Law; and (3) Kovalsky has demonstrated that there is a material question of fact as to whether the Debtor was a responsible individual and trustee under the Lien Law, by reason of his having authority to write checks during the critical time period from February 2001 to July 2001.

Kovalsky's Cross-motion for Summary Judgment is also denied on an interim basis, because the Debtor was primarily focused on his asserted statute of limitations defense, rather than on supplying whatever additional evidence he might have, which clearly Kovalsky has demanded that he produce on a number of occasions, to demonstrate that either he was not a responsible individual and trustee under the Lien Law, or that there was no diversion of trust funds.

### CONCLUSION

■ The Court will continue Cross-motion for Summary Judgment to the Court's Evidentiary Hearing Calendar at 9:00 a.m. on October 20, 2004, afford the Debtor the opportunity to provide Kovalsky and the Court with additional evidence to demonstrate that he is not a responsible individual and trustee under the Lien Law or that there has been no diversion, and the Court reserves the right to rule on the Cross-motion for Summary Judgment or set the matter down for a trial in the event that the Court believes that there are material questions of fact on either issue.[2]

**IT IS SO ORDERED.**

---

2. If the Debtor is a responsible individual and trustee under the Lien Law, he has the burden to prove that there has been no diversion. The burden is not placed on Kovalsky to prove a diversion once it demonstrates that it remains unpaid and Reynolds was paid in full for the projects in question, which the Debtor has admitted in his Motion for Summary Judgment.