Fay **RUGGLES**, Antoinette **Boone**, **Georgia Woodruff**, on behalf of themselves and all other similarly situated employees, Plaintiffs,

v.

**WELLPOINT, INC., Defendant.**

**Civ. No. 1:08–CV–201 (LEK/RFT).**

United States District Court,
N.D. New York.

Oct. 14, 2009.

Cara E. Greene, Outten, Golden Law Firm, New York, NY, Donald H. Nichols, Paul J. Lukas, Rachhana T. Srey, Robert L. Schug, Nichols, Kaster Law Firm, Minneapolis, MN, John T. Sparks, Sr., Atlanta, GA, for Plaintiffs.

Brett C. Bartlett, Erin McPhail Wetty, Heather G. Havette, Seyfarth, Shaw Law Firm, Atlanta, GA, Kenneth D. Sulzer,

Seyfarth, Shaw Law Firm, Los Angeles, CA, for Defendant.

### MEMORANDUM—DECISION and ORDER

RANDOLPH F. TREECE, United States Magistrate Judge.

Plaintiffs bring this action alleging that Wellpoint, Inc. ("Wellpoint") violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), as well as New York Labor Law § 650 *et seq.*, and New York State Department of Labor Regulations, by failing to pay overtime compensation to nurses in its employ. *See generally* Dkt. No. 1, Compl. Presently before the Court are Plaintiffs' Motions to Amend the Complaint and for Approval of Consent Forms filed after the expiration of the notice period deadline. Dkt. No. 149. Defendant opposes the Motions. Dkt. Nos. 151 & 153.

### I. BACKGROUND

Although we assume the parties' familiarity with the background of this case, we will briefly summarize the relevant history in order to put the Plaintiffs' current Motions into context.

Plaintiffs bring claims pursuant to the FLSA, and in addition, Plaintiff Fay Ruggles brings claims under New York law. Essentially, Plaintiffs' federal and state claims rest on the allegation that Wellpoint improperly designated them as "exempt" from overtime pay requirements and paid them on a salaried basis when, in accordance with the FLSA and New York laws, they were "nonexempt" employees eligible for overtime pay. Pursuant to the FLSA, 29 U.S.C. § 216(b), Plaintiffs seek to create a collective action on behalf of themselves and all other similarly situated employees. In an Order, dated November 6, 2008, this Court granted Plaintiffs' Motion for Conditional Certification for the purposes of issuing a court-authorized notice to potential opt-in plaintiffs, which we limited to all those employed by Wellpoint as "utilization review nurses, case management nurses, and medical management nurses ... during the three-years prior to the filing of the Complaint." Dkt. No. 73, Order, 591 F.Supp.2d 150, 165 (N.D.N.Y. 2008).

Thereafter, the parties stipulated that the opt-in period for potential plaintiffs would last for ninety (90) days, ending on April 13, 2009. Dkt. No. 149–4, Rachhana T. Srey, Esq., Aff., dated June 10, 2009, at ¶¶ 5–6; Dkt. No. 78, Order, dated Nov. 17, 2008 (approving the 90 day opt-in period). Since the stipulated notice was sent out, more than three hundred (300) individuals have filed consent forms to participate in this case. Srey Aff. at ¶ 6; *see also* Dkt. Nos. 81–106, 109, 111, 113–141, 144–45, 150, & 155. The notice and opt-in stages having been completed, the action is currently proceeding as a collective action throughout the discovery process, although the class may still be de-certified "[i]f, after discovery, it is apparent that plaintiffs and others are not similarly situated." *Lynch v. United Servs. Auto. Ass'n*, 491 F.Supp.2d 357, 367–68 (S.D.N.Y.2007) (internal citations omitted).

Plaintiff Fay Ruggles also seeks to make her New York State claims a class action pursuant to FED.R.CIV.P. 23. In addressing Defendant's Motion to Dismiss, the Honorable Lawrence E. Kahn, Senior United States District Court Judge, found that Ruggles stated a valid claim under New York law and declined to rule on whether her putative class action claim could satisfy the Rule 23 requirements, stating that the information necessary to make such determination would likely be

made available through discovery.[1] Dkt. No. 68, Mem.-Decision and Order, 253 F.R.D. 61, 65–67 (N.D.N.Y.2008).

Thus, Plaintiffs' current Motions are brought amidst discovery and prior to any determination as to the certification of Plaintiffs' putative collective group action under the FLSA and putative class action pursuant to Rule 23.

## II. MOTION TO AMEND

█ By its Motion to Amend, Plaintiffs seek to add class action claims pursuant to California and Illinois state laws on behalf of several proposed plaintiffs who have opted-in to the lawsuit. Proposed plaintiffs Maurice Billman and Karen Hawkins seek to bring the following class action claims under California law:

1.  Failure to pay overtime under California Wage Order No. 4 and California Labor Code § 510 and 1198;

2.  Failure to provide accurate wage statements under Labor Code §§ 226 and 1174;

3.  Waiting time penalties under Labor Code §§ 201, 202, and 203;

4.  Violation of the California Unfair Competition Law, California Business and Professions Code § 17200 *et seq.*

Dkt. No. 149, Pls.' Mem. of Law at p. 3 & Srey Aff., Ex. A, Proposed Am. Compl. at ¶¶ 36 & 71–92 (Causes of Action Nos. 3–6).

Proposed plaintiffs Harriet Childress and Nancy Coleman seek to allege a class action claim for failure to pay overtime under the Illinois Minimum Wage Law, 820 Ill. Comp. Stat. § 105/1 *et seq.* Pls.' Mem. of Law at p. 3 & Proposed Am.

Compl. at ¶¶ 45 & 93–101 (Cause of Action No. 7).

█ FED.R.CIV.P. 15(a) states, in pertinent part, that leave to amend a pleading should be "freely given when justice so requires." *Ellis v. Chao*, 336 F.3d 114, 127 (2d Cir.2003). Indeed, leave to amend should be denied only in the face of undue delay, bad faith, undue prejudice to the non-movant, futility of amendment, or where the movant has repeatedly failed to cure deficiencies in previous amendments. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *Kropelnicki v. Siegel*, 290 F.3d 118, 130 (2d Cir. 2002) (citing *Chill v. Gen. Elec. Co.*, 101 F.3d 263, 271–72 (2d Cir.1996)). District courts are vested with broad discretion to grant a party leave to amend the pleadings. *See Local 802, Assoc. Musicians of Greater New York v. Parker Meridien Hotel*, 145 F.3d 85, 89 (2d Cir.1998). "The party opposing a motion for leave to amend has the burden of establishing that granting such leave would be unduly prejudicial." *New York v. Panex Indus., Inc.*, 1997 WL 128369, at *2 (W.D.N.Y. Mar. 14, 1997) (citing *Saxholm AS v. Dynal, Inc.*, 938 F.Supp. 120, 123 (E.D.N.Y.1996)); *see also Lamont v. Frank Soup Bowl*, 2000 WL 1877043, at *2 (S.D.N.Y. Dec. 27, 2000) (citations omitted). This requires the non-movant to "do more than simply claim to be prejudiced." *Bryn Mawr Hosp. v. Coatesville Elec. Supply Co.*, 776 F.Supp. 181, 185 (E.D.Pa.1991).

█ In this case, Defendant argues that Plaintiffs' Motion to Amend should be denied on the grounds of (1) undue delay and (2) prejudice. Dkt. No. 151, Def.'s Mem. of Law at pp. 5–11. A delay in asserting either a cause of action or an

---

1.  Judge Kahn also denied Defendant's Motion to Dismiss Plaintiffs' FLSA claims and dismissed Plaintiffs' request for injunctive relief as a remedy for FLSA violations. Dkt. No. 68, 253 F.R.D. at 67–68.

affirmative defense for a significant period of time may result in a finding of prejudice. *United States v. Cont'l Illinois Nat'l Bank and Trust Co. of Chicago*, 889 F.2d 1248 (2d Cir.1989). Where the motion to amend is made after an "inordinate delay," a court has the discretion to deny leave of that amendment. *Travelers Indem. Co. v. Gosline*, 2003 WL 21230376, at *3 (N.D.N.Y. May 27, 2003) (citing *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir.1990)). In order to deny a motion to amend on the ground of delay, said ground must be accompanied by either bad faith or undue prejudice. *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993); *see also United States v. Cont'l Illinois Nat'l Bank*, 889 F.2d at 1254 (noting that delay alone is an insufficient ground to deny a motion to amend). However, "the longer the period of an unexplained delay, the less will be required of the nonmoving party" to show undue prejudice. *Evans v. Syracuse City Sch. Dist.*, 704 F.2d 44, 47 (2d Cir.1983) ("The proper standard is one that balances the length of the delay against the resulting prejudice[.]" (citation omitted)). For example, if said amendment causes an undue prejudice by requiring additional discovery or unnecessarily complicates the litigation, the motion to amend may be denied. *Kovian v. Fulton County Nat'l Bank and Trust Co.*, 1992 WL 106814, at *2 (N.D.N.Y. May 13, 1992).

Plaintiffs' Motion to Amend was filed on June 10, 2009, a little less than sixteen (16) months after the Complaint was filed on February 21, 2008. *Compare* Dkt. No. 19 *with* Dkt. No. 1, Compl. Plaintiffs contend that they could not have moved to amend prior to April 13, 2009, the closing date of the opt-in period, because until that time

"the universe of potential state law claims as issue [ ] was unknown." Dkt. No. 149, Pls.' Mem. of Law at p. 6. Defendant refutes Plaintiffs' contention by arguing that prior to Plaintiffs' Motion for Conditional Certification in November 2008, Plaintiffs filed consent forms from opt-in Plaintiffs hailing from California and Illinois, and therefore, should have been aware at that time of potential causes of action arising under California and Illinois law. Dkt. No. 151, Def.'s Resp. at p. 6.

However, even assuming Defendant's allegation to be true,[2] Plaintiffs' decision to await the end of the opt-in period prior to filing the instant Motion was not unreasonable and does not appear to have been made in bad faith. Had Plaintiffs filed a motion to amend prior to the close of the opt-in period, they might have been placed in the unenviable position of having to request a second motion to amend to include causes of actions arising under the laws of other states not including California and Illinois, which would have been in bad form. *See, e.g., Foster v. The Food Emporium, et al.*, 2000 WL 1737858, at *2–3 (S.D.N.Y. Apr. 26, 2000) (noting that FLSA plaintiffs' third motion to amend the complaint to include a claim for overtime wages under New York Labor Law constituted "sloppy pleading," but nonetheless granting the motion because refusal to do so would "simply spawn duplicate litigation" in state court). In addition, Plaintiffs assert that immediately following the close of the opt-in period, they reached out to Defendant regarding their intent to amend the Complaint, and after Wellpoint indicated its unwillingness to consent to such amendments, filed a letter with the Court to initiate motion practice. Srey Aff. at ¶¶ 7–8; Dkt. No. 142, Lt., dated May 13,

---

**2.** The consent forms on the Docket do not reflect the states in which the opt-in plaintiffs worked. *See, e.g.,* Dkt. No. 4.

2009 (requesting conference to discuss their motion to amend). Obviously, this contributed to the delay in filing the Motion to Amend. Moreover, because of the complex nature of the case and the discussions heard during the Rule 16 Conference, held on July 18, 2009, the Court did not set a deadline to join parties and amend pleadings in the Uniform Pre–Trial Scheduling Order. Dkt. No. 67. Thus, the Court does not perceive any bad faith on Plaintiffs' part as evidenced by the intentional use of dilatory tactics.

Defendant also asserts that the addition of Plaintiffs' proposed state law class action claims will prejudice its defense. In determining what constitutes prejudice in this context, courts within the Second Circuit generally consider "whether the assertion of the new claim or defense would (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." *Monahan v. New York City Dep't of Corr.*, 214 F.3d 275, 284 (2d Cir.2000) (quoting *Block v. First Blood Assoc.*, 988 F.2d at 350). Courts will further consider whether the opponent was otherwise on notice of the new claim, and whether that claim derives from the same facts set forth in the original pleading. *See, e.g., Hanlin v. Mitchelson*, 794 F.2d 834, 841 (2d Cir.1986); *Tokio Marine & Fire Ins. Co. v. Employers Ins.*, 786 F.2d 101, 103 (2d Cir.1986).

Defendant asserts that the addition of Plaintiffs' proposed claims would force it to expend significant additional resources and unduly delay the resolution of this action by expanding the universe of discovery. Plaintiffs argue Defendant will not be prej-

udiced by the inclusion of their state-law claims because this case is still in its infancy for discovery purposes, alleging that "[t]o date, Wellpoint has produced witnesses relating to just two of the sixteen individual topics listed in Plaintiffs' Rule 30(b)(6) deposition notice, have turned over personnel files for fewer than twenty plaintiffs, and have produced no payroll data." Pls.' Mem. of Law at p. 4. Defendant disagrees with Plaintiffs' "infancy" characterization, noting that they have produced "over 17,500 pages of documents and [ ] gathered and reviewed many more thousands of documents, which it is in the process of producing," and, in addition, have identified their Rule 30(b)(6) deponents. Def.'s Resp. at pp. 3–4. Moreover, Defendant argues that California and Illinois state laws proposed to be at issue "are very different from those of the FLSA and New York," and that the addition of such claims "would require substantial new preparation" on their part. Def.'s Resp. at p. 10.

Plaintiffs have proposed five (5) new causes of action. *See* Proposed Am. Compl. at ¶¶ 71–101 (Causes of Action Nos. 3–7). Proposed Causes of Action Nos. 3 and 7 assert claims for failure to pay overtime under California and Illinois law, respectively. With respect to Proposed Cause of Action No. 3,[3] Defendant points out that the standard for determining whether an employee is "exempt" under California law is different from the applicable FLSA test. Namely, California law contains a quantitative duties test, "such that the amount of time devoted to exempt activities and allegedly non-exempt activities is critical to the ultimate determination of exempt status." Dkt. No. 153, Def.'s Sur–Reply at p. 4. However, as De-

---

**3.** Defendant does not proffer any specific argument with respect to Plaintiffs' Proposed Cause of Action No. 7.

fendant also points out, time spent is a factor for determining whether an employee's "primary duty" is exempt work under the FLSA as well, albeit not the only factor. *See* 29 C.F.R. § 541.700(b). Thus, the amount of time Plaintiffs spent on exempt work will likely be a necessary subject of inquiry for Wellpoint's defense against Plaintiffs' failure to pay overtime claims under both the FLSA and California law, and as such, we do not find that Defendant will be significantly prejudiced by the addition of Proposed Cause of Action No. 3. In making this finding, the Court adopts the analogous finding of United States Magistrate Judge Nathaniel Fox in *Lynch v. United States Auto. Ass'n*, 614 F.Supp.2d 398, 402 (S.D.N.Y.2007), which addressed this very same argument, and its holding that FLSA and California overtime pay-related laws were not so distinct such that the addition of the state claims would raise a novel or complex issue for supplemental jurisdiction purposes.

Proposed Causes of Action Nos. 4–6 would add the following California law claims:

4. Failure to provide accurate wage statements under California Labor Code §§ 226 and 1174.

5. Waiting time penalties under California Labor Code §§ 201, 202, and 203.

6. Violation of the California Unfair Competition Law, California Business and Professions Code § 17200 *et seq.*

Proposed Am. Compl. at ¶¶ 80–92.

Plaintiffs assert that proposed Causes of Action 4 and 5 "are byproducts of the alleged overtime violations, *i.e.*, incorrect wage statements and late payment of wages due," an analysis Defendant does not challenge. Pls.' Mem. of Law at p. 8; *see generally* Def.'s Resp. & Sur–Reply. Cause of Action No. 6 accuses Defendant of engaging in unfair competition by denying earned wages to its employees. Proposed Am. Compl. at ¶¶ 87–92. Thus, all of the proposed Causes of Action derive from the same set of facts set forth in the Complaint. *Hanlin v. Mitchelson*, 794 F.2d at 841.

Furthermore, Plaintiffs' FLSA claim already includes opt-in plaintiffs from California and Illinois and, as such, even without the addition of Plaintiffs' proposed state-law claims, Defendant will have to defend against the allegation that they failed to pay overtime to employees working in California and Illinois. Defendant was or should have been put on notice of its potential liability under California and Illinois state laws at the time consent forms were filed by workers in those states, which, even according to Defendant, occurred prior to November 2008. Def.'s Resp. at p. 6.

Finally, we note that "[t]he mere specter of additional discovery does not foreclose the motion to amend." *Smith v. Johnson & Johnson, Inc.*, 2000 WL 1585070, at *3 (S.D.N.Y. Oct. 23, 2000) (citing *United States v. Cont'l Illinois Nat'l Bank & Trust Co.*, 889 F.2d at 1255). Wellpoint may indeed incur some additional costs defending against Plaintiffs' California and Illinois state-law claims, but those costs should be significantly limited by the common ultimate question that predominates Plaintiffs' claims: whether Wellpoint should have paid Plaintiffs overtime wages. And, despite Defendant's stated preference to incur the costs of defending against the proposed claims in separate state court actions, *see* Def.'s Resp. at p. 11, such a scenario would not achieve overall judicial economy given the common questions of fact and law that need to be resolved. Whether Wellpoint defends against numerous state actions across the nation or one central and collective action

within a particular district that addresses the very same issues, Wellpoint, in all probability, will expend the same exact amount of resources. What is acute from the Court's perspective is the basic instruction to simply avoid "spawn[ing] duplicate litigation," where possible. *Foster v. The Food Emporium, et al.,* 2000 WL 1737858, at *3.

Because Defendant has failed to meet its burden of establishing that it will be unduly prejudiced by the addition of Plaintiffs' proposed claims, the Motion to Amend is granted.

### III. MOTION FOR THE APPROVAL OF CONSENT FORMS

█ In our November 6, 2008 Order granting in part Plaintiffs' Motion for Conditional Certification, we established a nine (9) month period during which potential plaintiffs could opt-in to the collective action. Dkt. No. 73, Order, 591 F.Supp.2d at 164. Thereafter, the Court approved the parties' stipulation to shorten the opt-in period to ninety (90) days. Dkt. Nos. 76 & 78. Plaintiffs now seek the Court's approval of ten (10) consent forms that were filed after the stipulated cut-off date of April 13, 2009, the latest of which was filed on May 22, 2009. *See* Dkt. Nos. 136–141 & 145.

The FLSA does not specify when a person must opt-in to a collective action, rather, the deadline is set by the court. 29 U.S.C. §§ 216(b), 255, & 256. Nor does the FLSA provide a standard under which a court should consider whether to include opt-in plaintiffs whose consent forms are filed after the court-imposed deadline has passed. Although the caselaw on this issue is wide-ranging, courts have generally decided the question by balancing various combinations of the following factors: (1) whether "good cause" exists for the late submissions; (2) prejudice to the defen-dant; (3) how long after the deadline passed the consent forms were filed; (4) judicial economy; and (5) the remedial purposes of the FLSA. *See Ayers v. SGS Control Servs., Inc.,* 2007 WL 3171342, at *4–5 (S.D.N.Y. Oct. 9, 2007) (requiring that tardy opt-in plaintiffs show good cause for their untimely consent filings), *Robinson–Smith v. Gov't Empl. Ins. Co.,* 424 F.Supp.2d 117, 123–24 (D.D.C.2006) (considering the potential prejudice to defendant and the purposes of the FLSA), *Raper v. State of Iowa,* 165 F.R.D. 89, 92 (S.D.Iowa 1996) (considering prejudice and judicial economy), *Monroe v. United Air Lines, Inc.,* 94 F.R.D. 304, 305 (N.D.Ill. 1982) (considering how long after the deadline the consent forms were filed); *but see Reyes v. Texas Ezpawn, L.P.,* 459 F.Supp.2d 546, 566–67 (S.D.Tex.2006) (dismissing plaintiffs who filed consent forms after the opt-in period without any discussion of the above factors).

Balancing all of the above factors, we find that the ten (10) opt-in plaintiffs can be properly added despite their failure to submit notice forms prior to the cut-off date. Although Plaintiffs have offered no good cause for their failure to timely file these consent forms, all of the other factors weigh in their favor. Given that over three hundred (300) persons have consented to opt-in, the inclusion of these ten (10) plaintiffs will not overly burden or prejudice Defendant; actually, the impact will be relatively benign. Also, with one exception, all of these late opt-ins filed their consent forms within a month of the April 23, 2009 deadline. Thus, Defendant has not been prejudiced by a significant delay and the addition of these opt-ins should not significantly hamper the discovery process already underway.

In terms of judicial economy, were we to deny the admission of these plaintiffs, they would still be able to file separate causes

of action against Defendant, who would still face the prospect of defending against their individual FLSA claims. *See* 29 U.S.C. § 256(b). Obviously, there is little economy in spawning identical FLSA lawsuits that themselves might be properly joined with this lawsuit in the future. *See Abubakar v. County of Solano*, 2008 WL 550117, at \*2 (E.D.Cal. Feb. 27, 2008) (noting the futility in requiring late opt-in plaintiffs to file separately given the foreseeability of a consolidation order pursuant to FED. R. CIV. P. 42(a)). Finally, we agree with other courts' holdings that with respect to the FLSA, "[a] generous reading, in favor of those whom congress intended to benefit from the law, is also appropriate when considering issues of time limits and deadlines." *Kelley v. Alamo*, 964 F.2d 747, 750 (8th Cir.1992) (citation omitted) (cited in *Schaefer–LaRose v. Eli Lilly & Co.*, 2008 WL 5384340, at \*2 (S.D.Ind. Dec. 17, 2008) (allowing untimely opt-ins to join)).

Defendant suggests that our approval of these tardy opt-in plaintiffs will somehow give Plaintiffs *carte blanche* to file additional consent forms in the future. Def.'s Resp. at p. 14. Defendant can rest assured that this Order does not open the floodgates; it applies only to the ten (10) notices raised herein by the Plaintiffs. Furthermore, Plaintiffs are forewarned that any future motion to include additional opt-in plaintiffs would not be looked upon favorably by the Court.

### IV. CONCLUSION

For the reasons stated herein, it is hereby

**ORDERED,** that Plaintiffs' Motions to Amend and for Approval of Consent Forms (Dkt. No. 149) are **GRANTED;** and it is further

**ORDERED,** that the Clerk of the Court serve a copy of this Memorandum–Decision and Order upon the parties to this action.

**IT IS SO ORDERED.**